## THE STATE *v.* KRASHER ET AL.

[No. 21,063. Filed January 31, 1908.]

1. WORDS AND PHRASES.—*"Banking Company."—Partnership.*— The term "banking company," as used in §2031 Burns 1901, Acts 1891, p. 395, providing that "any officer of any banking company" who shall fraudulently receive any deposit which shall be lost to the depositor, shall be guilty of embezzlement, imports a partnership. p. 46.

2. SAME.—*"Lost to the Depositor."—Embezzlement.—Banks.*—The phrase "lost to the depositor," as used in §2031 Burns 1901, Acts 1891, p. 395, providing that any officer of any bank who fraudulently receives a deposit when the bank is insolvent and which deposit shall be "lost to the depositor" shall be guilty of embezzlement, imports a deprivation of the depositor of the temporary or permanent use of his deposit, and does not import that the bank may not ultimately pay all depositors. p. 46.

3. PARTNERSHIP.—*Legal Status.—Liability.*—A partnership, as such, has no legal existence apart from the individuals composing it. p. 47.

4. INDICTMENT AND INFORMATION.—*Embezzlement.—Banks.—Partnership.—Insolvency.*—An indictment of partners operating a bank, for embezzlement, under §2031 Burns 1901, Acts 1891, p. 395, which fails to allege that the individual partners of the "banking company" were insolvent at the time of accepting the deposit, is bad on a motion to quash. p. 48.

From Wabash Circuit Court; *A. H. Plummer,* Judge.

Prosecution by the State of Indiana against Daniel Krasher and others. From a judgment for defendants, the State appeals. *Affirmed.*

*James Bingham,* Attorney-General, *A. G. Cavins, E. M. White, H. M. Dowling* and *F. G. Carpenter,* for the State.

*Warren G. Sayre, I. E. Gingerich* and *W. F. McNagny,* for appellees.

GILLETT, J.—The State appeals in this case to procure a reversal of an order quashing an indictment against the appellees. The body of the indictment is as follows: ''The grand jury of the county of Wabash upon their oath do present that on June 6, 1904, at the county of Wabash and State of Indiana, Daniel Krasher and Dayton C. Harter, who were then and there persons doing a banking business at the town of North Manchester, as president and cashier, respectively, of a banking company organized as a copartnership for the purpose of and doing a banking business in said county and State, under the firm name and style of the 'Bank of North Manchester,' did then and there, as such president and cashier of said bank, unlawfully, feloniously and fraudulently receive from Edward P. Hartman, who was not then and there indebted to said bank, its president, cashier, or any member thereof, as such, the sum of $40 in money, of the value of $40, on deposit in said bank, said money then and there deposited was transferable by delivery and was the property of said Edward P. Hartman. Said bank, at the time said Daniel Krasher and Dayton C. Harter so received said money on deposit, was then and there insolvent, as said Daniel Krasher and Dayton C. Harter then and there well knew, whereby said money so deposited as aforesaid was then and there lost to said Edward P. Hartman, the depositor as aforesaid, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana. And the grand jury, aforesaid, upon their oath aforesaid, do further present that on June 6, 1904, at the county of Wabash and State of Indiana, Daniel Krasher and Dayton C. Harter were then and there persons engaged as president and cashier of a banking company organized as a copartnership for the purpose of and doing a banking business at the town of North Manchester, then and there situate, under the firm name and style of the 'Bank of North Manchester,'

and they did then and there unlawfully, feloniously and fraudulently receive from Edward P. Hartman, who was not then and there indebted to said bank aforesaid, the sum of $40 in money, of the value of $40, on deposit in said bank, said money then and there deposited was transferable by delivery and was the property of said Edward P. Hartman. Said bank, as such, was, and the copartners composing said banking company were, at the time said Daniel Krasher and Dayton C. Harter so received said money on deposit as aforesaid, then and there insolvent, as said Daniel Krasher and Dayton C. Harter then and there well knew, by reason of which said insolvency the money so deposited as aforesaid was then and there and thereby lost to said Edward P. Hartman, the depositor as aforesaid, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

The statute governing the offense charged is as follows: "If any banker, or broker, or person or persons doing a banking business, or any officer of any banking company, or incorporated bank doing business in this State, shall fraudently receive from any person or persons, firm, company or corporation or from any agent thereof, not indebted to said banker, broker, banking company or incorporated bank any money, check, draft, bill of exchange, stocks, bonds, or other valuable thing which is transferable by delivery, when, at the time of receiving such deposit, said banker, broker, banking company or incorporated bank is insolvent, whereby the deposit so made shall be lost to the depositor, said banker, broker or officer, so receiving such deposit, shall be deemed guilty [of] embezzlement, and upon conviction thereof, shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto may be imprisoned in the state prison not less than one, nor more than three years. The failure, suspension or involuntary liquidation of banker, broker, banking

company or incorporated bank, within thirty days from and after the time of receiving such deposit, shall be *prima facie* evidence of an intent to defraud, on the part of such banker, broker or officer of such banking company or incorporated bank.'' §2031 Burns 1901, Acts 1891, p. 395.

It will be observed that neither count of the indictment alleges the names of the persons who composed the partnership. It is the contention of the Attorney-General that the condition of insolvency referred to in the statute as applied to a partnership bank relates to the partnership itself, and that therefore an averment showing the insolvency of the partners is wholly unnecessary. It is clear that the term ''banking company,'' as used in the statute with reference to the element of insolvency, refers to a partnership or unincorporated association of persons engaged in banking, as distinguished from an incorporated banking association, and the question therefore arises whether, as applied to a partnership, there can be a condition of insolvency unless the individual partners are also insolvent.

There must, under the statute, be a fraudulent receiving of the deposit at a time when the banking company is insolvent, and then, as a result of such insolvency, an event must occur, namely, that the deposit ''shall be lost to the depositor.'' We may freely grant, as was held in *State* v. *Beach* (1897), 147 Ind. 74, 36 L. R. A. 179, that the word ''lost'' refers to a deprivation of the use of the deposit, or of some part thereof, and that this may occur although the estate is sufficient ultimately to pay all debts. This may give some color to the meaning of the prior term ''insolvent,'' but these elements afford no reason for so drastic a construction of the statute as that there might be a fraudulent receiving of the deposit because of an absence of available assets embarked in the business, when at the time the deposit was received the individual

partners were so situated financially that they could meet all demands which might reasonably be expected to be made upon them in the due course of business.

It is argued on behalf of the State that the construction suggested should be adopted, on the ground that a partnership is a legal entity. Expressions to that effect are 3. not infrequently found in the cases, but it appears clear to us that in thus speaking the courts have referred to partnerships as legal entities merely as a term of accommodation, where there was under consideration some question as to the rights of the partners *inter se,* or of the derivative rights of creditors growing out of the equities of the partners. Such statements cannot be accepted as affording a sufficient foundation for the view that a partnership is not composed of its individual members. The subject is carefully discussed in 22 Am. and Eng. Ency. Law (2d ed.), 75, where it is said: "Though by a legal fiction a corporation is regarded as a legal person or entity, separate and distinct from its members or stockholders, yet in the case of partnerships, at least at common law, exactly the reverse is held, and a firm, as such, is not regarded as having any legal existence apart from the members composing it. In accordance with this rule, what is called the property of the firm is the property of the individual partners, and what are called the debts of the firm are the debts of the partners. * * * Notwithstanding the non-recognition of the firm as a distinct legal entity, it is convenient, if not indispensable, for many purposes to personify the firm, and it is usual, whenever the collective rights and liabilities of the partners are the only immediate thing that need be considered, to use the terms 'firm' or 'partnership' as symbols to designate the aggregate whole as distinguished from the individual partners. It is merely a convenient mode of expression, which simplifies business operations and legal reasoning. Accordingly a firm is often spoken of as an entity,

having its own property, creditors, and the like, but this is only in the sense just explained, and means nothing more than that the partners, as such, have certain special rights and liabilities, which must be worked out through their partnership relation."

The precise question here under discussion was raised in *Meadowcroft* v. *People* (1896), 163 Ill. 56, 45 N. E. 303, 35 L. R. A. 176, 54 Am. St. 447, where, under a statute

4.  for the most part similar to the one before us, it was contended that an indictment was insufficient because it did not charge that at the time of receiving the deposit the partnership was insolvent. The court held, however, that the term "banking company" referred to the individual partners; that the firm did not constitute a natural or artificial person; and that if the partners were solvent the firm was solvent, while if the partners were insolvent the firm was insolvent.

It is our view that in such a case as this it is necessary to allege the insolvency of the partners, and, this being true, the personnel of the firm became descriptive of the offense. Under the statute, a part of the gravamen or burden of the charge must be that the partners were insolvent. To this the proof would have to be directed, and an averment of the insolvency of the members of a firm, who are in nowise described, except by an averment that they were doing business under a certain trade name, does not possess such a degree of certainty as fairly to advise the defendant concerning what he is to be put on trial for. Whether the views here expressed would obtain under subsequent legislation, we intimate no opinion.

The judgment is affirmed.