(June 29, 1925.)

BUHL HIGHWAY DISTRICT, a Municipal Corporation, Respondent, v. RUSS W. ALLRED and UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Appellants.

[238 Pac. 298.]

MUNICIPAL CORPORATIONS — PUBLIC DEPOSITORY LAW — DEPOSITORIES — FAILURE TO PAY DEPOSITS --- INSOLVENCY — "LOSS" OF FUNDS — HIGHWAY DISTRICT—FUNDS RECEIVED BY TREASURER—FAILURE TO CALL WARRANTS — EFFECT — LIABILITY OF TREASURER — COMMISSIONERS HAVE NO POWER TO WAIVE COMPLIANCE WITH LAW — FAILURE TO APPORTION FUNDS—EFFECT—DEPOSITORY BONDS—DEPOSIT WITH COUNTY AUDITOR—MITIGATION OF DAMAGES—FAILURE OF DEPOSITORY TO CREDIT INTEREST ON DAILY BALANCES—EFFECT.

1. When a bank, a depository, fails to pay back deposits by reason of its insolvency, the money is "lost" in contemplation of

the public depository law (Sess. Laws 1921, c. 256, sec. 33), even though a portion or all of the deposit may be ultimately recovered from the bank or stockholders or upon a depository bond.

2.   The evidence *held* sufficient to show that the funds in dispute were received by the treasurer of the depositing unit.

3.   A treasurer of a highway district, who fails, neglects and refuses to call warrants of the district for payment whenever there is an amount to the credit of the district fund, as shown by the books of the treasurer, sufficient to pay the warrant or warrants next entitled to payment therefrom, but leaves the money on deposit in a depository bank which thereafter fails, contributes to the loss of those funds, and is liable personally and upon his official bond for such loss.

4.   The commissioners of a highway district have no power or authority to waive the performance of the duties of its treasurer to call outstanding warrants for payment when there is an amount to the credit of the district fund sufficient to pay such warrants, or to apportion the funds of the district between duly designated depositories, so as to excuse a breach of duty of the treasurer in failing to perform such duties, or relieve him from liability for the loss of funds through such breach of trust.

5.   A treasurer of a depositing unit, who fails and neglects to keep deposited with each designated depository, as nearly as practicable, such proportion of the total deposit of the depositing unit as the capital and surplus of such bank bears to the total capital and surplus of all designated depositories contributes to the loss of such funds by the failure of a depository bank in which he has deposits in excess of the amount which should have been apportioned thereto.

6.   Under the public depository law (Sess. Laws 1921, c. 256, sec. 18), the deposit of depository bonds with the county auditor is not a condition precedent to their becoming effective.

7.   A depositing unit need not seek recovery upon a depository bond, or recovery of supposed trust funds, or offset its warrants held by the depository against a lost deposit, before bringing action against its treasurer upon his official bond for contributing to the loss of such funds.

Publisher's Note.

3.   Liability of public officer for loss of public money, see notes in Ann. Cas. 1914C, 492; 17 Ann. Cas. 929; 18 A. L. R. 982 (township trustees); 25 A. L. R. 1358 (sinking fund).

8. The rule that one must mitigate or make his damages as little as possible applies to the time when damages are accruing, not to his election of remedies after damages have accrued.

9. The failure of a depository to credit interest upon daily balances to the account of the depositing unit does not render the treasurer of the depositing unit liable for such interest.

10. The failure of a treasurer of a highway district to call outstanding warrants for payment when they should have been called renders him liable for interest accrued and unpaid since a date ten days after the warrants should have been called.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. William A. Babcock, Judge.

Action on the bond of the treasurer of a highway district to recover funds lost through the insolvency of a depository bank. Judgment for plaintiff. *Modified and affirmed.*

Gustin & Pence and A. R. Hicks, for Appellants.

Payment of the warrants by Buhl banks, having deposits of plaintiff, relieves plaintiff from further liability. (1 Morse on Banks and Banking, 5th ed., sec. 311; 2 Daniel on Negotiable Instruments, 6th ed., sec. 1572; *Bates v. Capital State Bank,* 18 Ida. 429, 110 Pac. 277; *Mt. Sterling Nat. Bk. v. Green,* 99 Ky. 262, 35 S. W. 911, 32 L. R. A. 568; Ames' Cases on Suretyship, p. 220, note; *Bank of Taylorsville v. Hardesty* (Ky.), 91 S. W. 729; *Fidelity Ins. Trust & S. D. Co. v. West Penn & S. C. R. Co.,* 138 Pa. 494, 21 Am. St. 911, 21 Atl. 21; *McConnel v. Simpson,* 36 Fed. 750; *Montgomery v. Victory,* 110 Ind. 211, 11 N. E. 38; *People v. Craig,* 63 Ohio, 374, 81 Am. St. 639, 59 N. E. 102, 52 L. R. A. 872; *Lane v. Hunt,* 13 Tex. Civ. 315, 35 S. W. 10; *Hamilton v. Dooly,* 15 Utah, 280, 49 Pac. 769; *Gray v. Herman,* 75 Wis. 453, 44 N. W. 248, 6 L. R. A. 691; *Allen v. McCreary,* 101 Ala. 514, 14 So. 320; *Dial v. Inland,* 52 Wash. 81, 100 Pac. 157; *First Nat. Bank v. Terry,* 203 Ala. 401, 83 So. 170.)

These warrants are not negotiable under the law-merchant and the assignee stands in the same position as the assignor. (*Goldman v. Murray,* 164 Cal. 419, 129 Pac. 462; *Craig v.*

*Palo Alto Stock Farm,* 16 Ida. 701, 102 Pac. 393; *Warren v. Stoddart,* 6 Ida. 692, 59 Pac. 540; *Machen v. R. Co.* (Mo. App.), 242 S. W. 131; *Sanderson v. Clark,* 33 Ida. 359, 194 Pac. 472; *Le Porin v.* State *Exchange Bank,* 113 Kan. 76, 213 Pac. 650; *Sagory v. Metropolitan Bank,* 42 La. 627, 7 So. 633; *Garfield v. Crocker,* 63 Kan. 272, 65 Pac. 273; 5 C. J. 966; *Wall v. Monroe,* 103 U. S. 74, 26 L. ed. 430; *Bank of Santa Cruz v. Bartlett,* 78 Cal. 301, 20 Pac. 682; *American Bank v. Sommerville,* 191 Cal. 364, 216 Pac. 376; *Barker v. Seattle,* 97 Wash. 511, 166 Pac. 1143; *Lane v. Hunt, supra;* Daniel on Negotiable Instruments, sec. 427.)

Loss must be actually sustained before recovery. (9 C. J. 129; *Dart v. Southwestern Bldg. & L. Assn.,* 99 Ga. 794, 27 S. E. 171; *Stewart v. Abbey,* 62 Misc. Rep. 84, 116 N. Y. Supp. 259; *Scott v. Phillips,* 140 Pa. St. 51, 21 Atl. 241; *City of Aberdeen v. Honey,* 8 Wash. 251, 35 Pac. 1097; *City v. Brett,* 193 N. Y. 276, 86 N. E. 6; *Massey v. Schott,* 16 Fed. Cas. 1073, 1 Pet. C. C. 132, 262; Elliott on Contracts, sec. 2120; Sedgwick on Damages, 9th ed., secs. 96, 675; Sutherland on Damages, 3d ed., sec. 75; Williston on Contracts, sec. 774; *Turck v. Marshall Silver Min. Co.,* 8 Colo. 113, 5 Pac. 838; *Keck v. Bieber,* 148 Pa. St. 645, 33 Am. St. 846, 24 Atl. 170.)

Plaintiff has not been called upon to pay warrants and the action is premature. (1 C. J. 1151; *Rockford v. Jacob,* 6 Wash. 421, 33 Pac. 1057.)

It is the duty of the district to take such measures as it can to reduce any possible loss. (Page on Contracts, sec. 3193; Williston on Contracts, sec. 1353; Sedgwick on Damages, secs. 200, 202; *Davis v. Fish,* 1 G. Greene (Iowa), 406, 48 Am. Dec. 387; *Miller v. Mariner,* 9 Greenl. (Me.) 51, 20 Am. Dec. 341; *State v. McNelis,* 72 Ind. App. 231, 122 N. E. 690; *United States v. United States F. & G. Co.,* 236 U. S. 526, 35 Sup. Ct. 298, 59 L. ed. 696.)

Bank can avail itself of any offsets it may have. This is under the doctrine that it must mitigate any loss; it is under obligation to take that course. (7 C. J. 652; *Hall v. McIntosh,* 22 Colo. App. 380, 124 Pac. 753; *Williams v.*

*Johnson,* 50 Mont. 7, 144 Pac. 768; *Hall v. Burrell,* 22 Colo. App. 278, 124 Pac. 751.)

Bothwell & Chapman, for Respondent.

The finding of the court that Allred, as treasurer of respondent, in violation of his duties as such treasurer and in violation of law, failed, refused and neglected to pay outstanding registered warrants of respondent against its general road and bridge fund in the sum of $41,825.16, and that he unlawfully and fraudulently violated his duties in appropriating said sum of money to his own use, is sustained by the evidence and supported by the law. It was Allred's duty, as respondent's treasurer, to call for payment and to pay respondent's outstanding registered warrants in an amount equal to its funds in his possession for that purpose. For the breach of this duty his official bond is liable in the amount of the loss occasioned thereby. (C..S., secs. 1504, 1544, 1545, 1546, 1547, 1548, 1549, 1555; sec. 10, art. 7, and sec. 4, art. 8, Const. Ida.; 29 Cyc. 1386, 1455; 22 R. C. L., secs. 176, 189, 191; *State v. Title Guaranty & Surety Co.,* 27 Ida. 752, 152 Pac. 189; *Bush v. Johnson County,* 48 Neb. 1, 58 Am. St. 673; *State v. Nevin,* 19 Nev. 162, 3 Am. St. 873; *State v. Copeland,* 96 Tenn. 296, 54 Am. St. 840; *Lee v. Charmley,* 20 N. D. 570, 129 N. W. 448, 33 L. R. A., N. S., 275; *Gold v. Campbell,* 54 Tex. Civ. 269, 117 S. W. 463; *Richland County v. Owens,* 92 S. C. 329, 75 S. E. 549; *Myers v. Colquitt* (Tex.), 173 S. W. 993; *Deason v. Gray,* 189 Ala. 672, 66 So. 646; *American Surety Co. v. Stinnett,* 78 Okl. 31, 188 Pac. 1060; *Mower County v. American Bonding Co.,* 133 Minn. 274, 158 N. W. 394; *People v. Smith,* 123 Cal. 70, 55 Pac. 765; *Graham v. City of Baxley,* 117 Ga. 42, 43 S. E. 405; *Ramsay's Estate v. People,* 197 Ill. 572, 90 Am. St. 177, 64 N. E. 549; *Hall v. Tierney,* 89 Minn. 407, 95 N. W. 219; *National Bank of Redemption v. Rutledge,* 84 Fed. 400; *State v. Moore,* 56 Neb. 82, 76 N. W. 474; *Fidelity & Deposit Co. of Maryland v. Wilkinson County,* 106 Miss. 654, Ann. Cas. 1916B, 1248, 64 So. 457.)

The mere presentation of warrants to Allred, as treasurer for registration, and the fact of the purchase of some of

them by the Citizens State Bank of Buhl from the original payees, was neither in fact nor in law a payment of such warrants by the Citizens State Bank of Buhl nor by respondent. So far as this action is concerned, the question of whether these warrants are negotiable or non-negotiable is unimportant, since there is an entire absence of any question regarding the validity or regularity of their issuance to the payees. (C. S., secs. 1545, 1546, 1547, 1548, 1549; 5 McQuillin on Municipal Corporations, pp. 4762, 4763, 4771, 4772; *Watson v. City of Huron,* 97 Fed. 449; *Heffelman v. Pennington County,* 3 S. D. 162, 52 N. W. 851; *National Bank v. Herold,* 74 Cal. 603, 5 Am. St. 476, 16 Pac. 507; *People ex rel. v. Johnson,* 100 Ill. 537, 39 Am. Rep. 63: *Field v. Village of Highland Park,* 141 Mich. 69, 104 N. W. 393; 28 Cyc. 1570: C. S., sec. 6695; *Rauh v. Oliver,* 10 Ida. 3, 77 Pac. 20; 34 Cyc. 712, 744, 745, 746, 748; 8 C. J. 805, 806; sec. 13, chap. 42, Sess. Laws 1921; 3 R. C. L., 647; *Fremont County v. Fremont County Bank,* 145 Iowa, 8, Ann. Cas. 1912A, 122, 123 N. W. 782; 5 McQuillin on Munic. Corp., secs. 2249, 2251, 2256, 2259; 8 McQuillin on Munic. Corp., Supp., secs. 2251, 2252, 2256, 2259; 2 Daniel, Negotiable Instruments, 4th ed., sec. 1221.)

The court's finding that Allred, in violation of his duties as respondent's treasurer, became obligated to pay interest to respondent at the rate of seven per cent per annum upon the amount of such outstanding registered warrants, for the calling and payment of which funds of respondent were available and in his possession, is sustained by the evidence and supported by the law. (See authorities above cited.)

The finding of the trial court that Allred, in violation of his duties as respondent's treasurer, failed, refused and neglected to pay to respondent interest on daily balances of respondent's funds kept on deposit by him in the Citizens State Bank of Buhl, Idaho, is sustained by the evidence and supported by the law. (Sec. 10, art. 7, and sec. 4, art. 8, Const. Ida; secs. 29, 30, 34, chap. 256, Sess. Laws 1921; 22 R. C. L., secs. 4, 192; *Adams v. Williams,* 97 Miss. 113, Ann. Cas. 1912C, 1129, 52 So. 865, 30 L. R. A., N. S., 855; *State v. McFetridge,* 84 Wis. 473, 54 N. W. 1, 998, 20 L. R. A. 223;

*State v. Harshaw*, 84 Wis. 532, 54 N. W. 17: *Eshelby v. Board of Education*, 66 Ohio St. 71, 63 N. E. 586; *Rhea v. Brewster*, 130 Iowa, 729, 8 Ann. Cas. 389, 107 N. W. 940; 8 Am. & Eng. Ann. Cas. 389; *Vansant v. State*, 96 Md. 110, 53 Atl. 711; *Thompson v. Territory*, 10 Okl. 409, 62 Pac. 355; *United States v. Mosby*, 133 U. S. 273, 10 Sup. Ct. 327, 33 L. ed. 625; *Baltimore & O. R. Co. v. Gaulter*, 165 Ill. 233, 46 N. E. 256; *Wilkes-Barre v. Rockafellow*, 171 Pa. St. 177, 50 Am. St. 795, 33 Atl. 269, 30 L. R. A. 393.)

It was Allred's duty as respondent's treasurer, to divide the deposits of its funds between the First National Bank of Buhl and the Citizens State Bank of Buhl, its designated and qualified depositaries, in the manner and amount provided by law. The finding of the court that he failed, refused and neglected so to do and failed to deposit with the First National Bank of Buhl $18,201.75, and that he wrongfully and unlawfully deposited said amount with the Citizens State Bank of Buhl, Idaho, and that respondent suffered thereby loss in that sum, is sustained by the evidence and supported by the law. (Secs. 24, 25, 26, 27, 28, 34, 35, chap. 256, Sess. Laws 1921; 22 R. C. L. 228; *Casey v. Independence County*, 109 Ark. 11, Ann. Cas. 1915C, 1008, 159 S. W. 24; *State v. Title Guaranty & Security Co.*, 27 Ida. 752, 152 Pac. 189; *Bush v. Johnson County*, 48 Neb. 1, 58 Am. St. 673; *Lee v. Charmley*, 20 N. D. 570, 129 N. W. 448, 33 L. R. A., N. S., 275; *Gold v. Campbell*, 54 Tex. Civ. 269, 117 S. W. 463; *Richland County v. Owens*, 92 S. C. 329, 75 S. E. 549; *Myers v. Colquitt* (Tex.), 113 S. W. 993; *Mower County v. American Bonding Co.*, 133 Minn. 274, 158 N. W. 394; *Ramsey's Estate v. People*, 197 Ill. 572, 90 Am. St. 177, 64 N. E. 549; *State v. Moore*, 56 Neb. 82, 76 N. W. 474; *Lowe v. City of Guthrie*, 4 Okl. 287, 44 Pac. 198; *Aultman-Taylor Machinery Co. v. Burchett*, 15 Okl. 490, 83 Pac. 719.)

Respondent is not required to exhaust its remedies against the depository bond of the Citizens State Bank of Buhl or against the department of finance of this state to entitle it to recovery in this action upon Allred's official bond. The doctrine of election of remedies has no application to this case. (20 C. J., 7, 8; *In re Kaplan & Meyers*, 241 Fed. 459;

*American Process Co. v. Florida White Pressed Brick Co.*, 56 Fla. 116, 16 Ann. Cas. 1054, 47 So. 942; *Steinbach v. Murphy*, 143 Mo. App. 537, 128 S. W. 207; *Jones v. Gammell-Statesman Publishing Co.* (Tex. Civ.), 94 S. W. 191; *McLendon Bros. v. Finch*, 2 Ga. App. 421, 58 S. E. 690; *Union Central Life Ins. Co. v. Drake*, 214 Fed. 536; *Crittenden v. St. Hill*, 34 Cal. App. 107, 166 Pac. 1016; 32 Cyc. 91, 92, 97, 98; 21 R. C. L., sec. 164; 22 R: C. L., secs. 214, 215; *American Bonding Co. v. National Mechanics' Bank*, 97 Md. 598, 99 Am. St. 466, and note, 55 Atl. 395.)

TAYLOR, J.—This action was brought by Buhl Highway District against the appellants, Russ W. Allred, its treasurer, as principal, and United States Fidelity & Guaranty Company as surety, upon his bond. It results from the failure of the Citizens State Bank, of Buhl, in which funds of the district were deposited. The cause was tried by the court, and judgment entered in favor of respondent for $73,-075.18, as the aggregate of the items and interest named in the findings. This appeal is from that judgment.

Appellant Allred was elected and qualified as treasurer of the district in December, 1918, was thereafter re-elected in 1921, and continued to be treasurer until May, 1922, and was, at all times, a stockholder, director and cashier of the Citizens State Bank. The execution and delivery of the bond sued upon and the failure of the bank are not disputed.

When the bank failed, on December 2, 1921, $91,861.61, funds of the district, were carried on the bank books in' two accounts, viz.:

Buhl Highway District, General Fund ...$72,706.11
Buhl Highway District, Bond Fund ..... 19,155.50

The general fund consolidated the cash balances in the following funds:

General Road and Bridge Fund ........$41,825.16
Bond Interest Fund ................ 16,062.36
Bond Sinking Fund ................. 14,818.59

Carried by Bank as General Fund......$72,706.11

There was on deposit in the First National Bank of Buhl a bond fund of $20,000.

The complaint alleged, and the court found, that Allred, as treasurer, violated his legal duties and the obligations of his bond, briefly stated, as follows:

(1) That he failed, refused and neglected to call for payment or to pay outstanding warrants of the district, against the general road and bridge fund, in the sum of $41,825.16, although he had received funds for the payment thereof; and that he wrongfully, unlawfully and fraudulently, and in violation of his duties as such treasurer, appropriated said sum of money to his own use and benefit.

(2) Because of his failure to call said warrants, the district was obligated to pay interest thereon, at the rate of seven per cent per annum, from the dates when the warrants should have been called, amounting to the sum of $973.99.

(3) He failed to collect and pay to the district interest on daily balances of the funds of the district deposited in the Citizens State Bank in the sum of $2,612.88, and appropriated said sum to his own use.

(4) That instead of apportioning the funds of the district between the Citizens State Bank and the First National Bank, depositories, in accordance with the depository law, he deposited in the Citizens State Bank $18,201.75 which should have been placed in the First National Bank, by which action the said sum was lost to the district when the Citizens State Bank failed.

(5) He failed to account for or pay over to his successor the aggregate of the aforementioned sums, or $69,613.78, whereby the district suffered damage in the sum of $69,-613.78, with interest thereon, and with interest on the sum of $18,201.75, at seven per cent per annum, from December 2, 1921, amounting to $3,481.40.

The appellants, by denials and affirmative defenses, and by errors alleged as to the findings and insufficiency of the evidence, present a number of elements of defense, which may be best treated and decided *seriatim.*

The first contention is that the Citizens State Bank executed and delivered to respondent a depository bond to secure the payment of any loss that might be suffered by reason of the failure of the bank to pay the deposits made therein; that respondent has filed its claim to recover from the bank the amounts and for the same items as claimed and alleged against the appellants; that there are ample funds in and assets of the bank available for payment of any loss that might be suffered by respondent; that respondent has not suffered any actual loss and may never suffer any; that the funds sought to be recovered are trust funds, and respondent should recover its trust funds first and apply them on the amount due; that it can offset its warrants held by the bank as against the deposit; that it can defend against some of the warrants as paid; that it should mitigate its damages before suing the appellants; that the alleged loss or damage set forth in the complaint is unliquidated; that it cannot be determined what, if any, loss respondent may have sustained until the final winding up of the affairs of the Citizens State Bank; and that this suit is prematurely brought. -

The condition of this bond was not that the surety would pay if the district could not recover the money from the bank, or from its depository bond, or from any other source where the treasurer may have seen fit to place the money, or had illegally paid it out, but that he would faithfully perform the duties of his office, and pay over, in accordance with law, all moneys coming into his hands by virtue of his office. If it were not for the depository law and the compliance by these banks therewith, there would be an absolute liability upon the treasurer to account for or pay over every dollar of deposits received by him, and he can excuse himself only in so far as the depository law and the facts with relation to the deposits protect him.

Sess. Laws 1921, c. 256 (styled the public depository law, which became effective May 4, 1921), sec. 33, provides:

"The treasurer shall not be liable personally or upon his official bond for any moneys that may be lost by reason of the failure or insolvency of any bank which becomes a de-

pository under this law, except in so far as his violation of any trust devolving upon him as such treasurer or any of the provisions of this law shall contribute to such loss." ·

Webster's New International Dictionary (G. & C. Merriam Co., 1921) defines "loss" as "Act or fact of suffering deprivation; failure to keep a possession; esp., the unintentional parting with something of value; . . . . that of which anything is deprived or from which something is separated, usually unintentionally and to disadvantage," and "lost" as, "Parted with; gone out of one's possession; . . . . taken from the possession of."

When money is deposited with a bank, the implied contract of the bank is to repay that same amount on demand, and when it is not paid back because of the insolvency of the bank, the depositor is deprived of the efficacy of his right to have the money repaid upon demand, and the money is "lost" within the meaning and intent of the statute, even though a portion or all of the deposit may be ultimately recovered from the bank or stockholders, or upon a depository bond. This action is not premature. (*State v. Krasher,* 170 Ind. 43, 83 N. E. 498; *Meadowcroft v. People,* 163 Ill. 56, 45 N. E. 303; s. c., 45 N.. E. 991, 35 L. R. A. 176; *State v. Beach,* 147 Ind. 74, 43 N. E. 949; s. c., 46 N. E. 145, 36 L. R. A. 179; *Queenan v. Palmer,* 117 Ill. 619, 7 N. E. 613.)

As to the outstanding warrants, appellants contend that Allred never had or received funds of the highway district for their payment; that the deposits in this general fund were not made by him, but that, on the contrary, the board passed a resolution to the effect that no money should be deposited by the treasurer and no distribution of funds made without the concurrence of the secretary; that all the funds and moneys arising from taxes applicable to paying warrants drawn on this fund were paid by the proper officers of Twin Falls county to the secretary of the highway board, and deposited by him with the Citizens State Bank; and that they did not come into the hands of the appellant treasurer. These contentions are not borne out by evidence of a recommendation made by an auditor that the treasurer

should receive no money without authorization of the secretary, and should transfer no money without authorization of the secretary, even though, as contended, this recommendation was adopted by the board.

Whether the county warrants were physically carried to the bank by the secretary or not, the funds were derived from county warrants made payable to Russ W. Allred, treasurer, and either indorsed by him, or, with a rubber stamp, by others at the bank with his knowledge and consent, "Buhl Highway District, by Russ W. Allred, Treasurer," and deposited in the Buhl Highway District general fund. Each month, as treasurer, Allred made a signed report to the district showing "the finances of the District," and, some time during his tenure, he had acknowledged in those reports receipt of every dollar of this general road and bridge fund as "received since last report" and "on hand at date." His last report before the bank failed, dated November 30, 1921, two days before the bank failure, acknowledged "on hand at date" $72,706.11, the exact amount shown by the books of the bank as the general fund, and he admits his possession of the bond fund of $19,155.50. The finding of the court that these funds deposited came into the hands of the treasurer is amply supported by the evidence.

Until February, 1920, the general road and bridge fund was overdrawn. This had come about by the fact that any warrants drawn were cashed out of the general fund in the bank, which contained a credit but in which there was not then any road or bridge fund balance. Beginning in February, 1920, with a balance of $2,995.61, by various increases, the balance increased until the bank failed, when there was a credit in that fund of $41,825.16. In February, 1920, there were outstanding warrants of something over $35,000, which increased in volume until when the bank failed they amounted to $61,207.91. Except in the month of June, 1920, there were always warrants outstanding in excess of the amount in the fund, so that when warrants were presented to the treasurer, it became his duty to stamp them "not paid for want of funds" with the date of this

41 Idaho—5

indorsement. This he, or someone at the bank with his knowledge and consent, did, by means of a rubber stamp, as to all of the warrants in controversy. The procedure followed by the appellant Allred and the Citizens State Bank and others, was that these warrants would then be purchased by someone. Allred himself testified, and the record amply establishes, that these warrants were bought by various purchasers, including the Citizens State Bank and the First National Bank, the payee of the warrant in each instance assigning it, receiving his money, and the warrants thereafter being held by purchasers, or sold to others, or deposited in various places as security.

It is the duty of the treasurer to call warrants for payment "whenever there is an amount to the credit of the district fund, as shown by the books of the treasurer, sufficient to pay the warrant or warrants next entitled to payment therefrom" (C. S., sec. 1548), and C. S., sec. 1549, as amended by Sess. Laws 1921, c. 39, sec. 1, provides:

"Interest on any warrant shall cease on the expiration of ten days . . . . ; and for all sums which may be paid by the treasurer, as interest on any warrant or warrants, after the expiration of ten days from the earliest date at which there were sufficient funds with which to have called and paid the same, such treasurer and his sureties shall be liable upon his official bond."

Allred, with few exceptions, had issued no call for outstanding warrants for a long time prior to January, 1921, and, with very few exceptions, called no warrants for payment after that time up to the time of the closing of the bank. His failure to call these warrants was a breach of duty under the law, which makes him liable for any loss occasioned thereby.

"Where an official bond does not define the duties of the office it is obvious that an act will be a breach of the bond if without a bond it would have amounted to breach of an official duty . . . . An act done by a public officer in direct violation of a statute regulating his duties is

generally considered an official misconduct within the terms of his bond." (22 R. C. L., sec. 189, p, 505.)

His act in leaving the money in the bank when he should have called and paid warrants with it was an appropriation to his own use or the use of another, and for a purpose not authorized by law, all in violation of duty and of the provisions of C. S., sec. 8379. (*In re Bank of Nampa, Ltd.*, 29 Ida. 166, 157 Pac. 1117.) He cannot avoid liability for its loss. (*Board of Education v. Nelson*, 33 N. D. 462, 157 N. W. 664; *Wiley v. City of Sparta*, 154 Ga. 1, 114 S. E. 45, 25 A. L. R. 1342.)

In *Richland County v. Owens*, 92 S. C. 329, 75 S. E. 549, the court said:

"(The) failure of an officer to obey the positive mandate of the statutes is misfeasance in office, and a breach of his bond that he shall well and truly perform the duties of his office as required by law.

"The question of proximate cause, though ordinarily for the jury, is for the court, when the evidence is susceptible of only one reasonable inference. . . . .

" . . . . When a public officer pays out public funds without compliance with the terms of a mandatory statute, the law will presume that his act is the direct cause of the loss of such funds, and the burden is upon him to rebut the presumption, and prove that, notwithstanding his violation of the law, no loss resulted."

There can be no doubt of the liability of the treasurer and his official bond for the breach of a duty to call the warrants, or pay them on presentation, for the amount of the loss occasioned thereby.

. The appellants contend that the commissioners of respondent district at all times knew that Allred was not calling warrants for payment when his record showed that he had sufficient funds on hand to pay them; that he gave the commissioners, as his reason, that if he did so call the warrants, the Citizens State Bank would be unable to pay them and would suspend, and the funds would be lost; that the board of commissioners all knew the condition of the banks

which had on deposit moneys of the district, and knew that if the highway district, by its treasurer, were to draw a warrant or a check for the entire amount on deposit in these banks, it would close their doors; that the commissioners consented and acquiesced in his not calling the warrants for payment with full knowledge of these facts; that they agreed with the Citizens State Bank that it should pay seven per cent interest on this money until such time as the warrants could be called and paid; and seek to infer or prove that the commissioners thus relieved him and his sureties of any liability for loss occasioned by his failure to call the warrants.

This is not borne out by the record, which nowhere discloses that they either authorized, requested or ordered that the treasurer do not call the warrants. In fact, the record shows that they did several times ask him to call the warrants, and such facts, even if established, would not constitute a good, or valid, or any excuse or defense for the dereliction of duty of the treasurer. Allred testified that in November, 1920, he told the board that there were some warrants that ought to be called; that the bank was unable to pay the warrants in case they were called; and that it would pay seven per cent interest on this money until such time as they could call the warrants and have them paid; that the board asked about how long that would be, to which he replied, ''It don't look as though there would be much money coming in before next fall, but, however, I will call them as fast as possible.'' In January, 1921, the bank paid $2,800, being seven per cent interest on deferred warrants up to that time.

The commissioners had no power or authority to waive the performance of this duty by the treasurer, and could make no valid agreement with the treasurer or the bank that they would not require him to call the warrants when he had funds on hand sufficient to pay them, or that, on the bank's paying interest on the funds, they would waive his duty to call them or defer the call.

In *Mayor and City Council of Baltimore v. Reynolds,* 20 Md. 1, 83 Am. Dec. 535, the court said:

"Although a private agent acting in violation of specific instructions, yet within the scope of a general authority may bind his principal, the rule as to the effect of a like act of an officer of a (public) corporation is otherwise. In the former case the extent of the authority is necessarily known only to the principal and agent, while in the latter it is a matter of record in the books of the corporation or of public law.

"In cases of public agents, the Government or other public authority is not bound unless it manifestly appears that the agent is acting within the scope of his authority, or he is held out as having authority to do the act, or is employed in his capacity as a public agent to make the declaration on representation for the Government.

"Agents themselves, not principals, answerable to their constituents, they (municipal corporations) are not to be presumed to recognize and incidentally ratify and confirm the acts of their officers, done beyond the scope of their authority. Acts of ratification by such bodies politic should be direct, explicit, unequivocal, with full knowledge of the facts."

Other courts, under similar facts, have said:

"A governmental corporation is not estopped by the act of an officer, in cases where the act is beyond the scope of his authority." (*Union School Tp. v. First National Bank,* 102 Ind. 464, 2 N. E. 194.)

"Persons dealing with public officers having statutory powers must, at their peril, ascertain the scope of their authority, and cannot claim an estoppel against a city by reason of unauthorized acts or statements of its treasurer." (*Rissing v. City of Fort Wayne,* 137 Ind. 427, 37 N. E. 328.)

"We do not see that the protection of the excess funds by the operation of section 3485 will be prevented by the board's permitting the depository to have in its possession a greater amount of funds than the bank had qualified for. This is a suit by the county. The rights of the county are sought to be enforced, not those of the board. In the

case at bar the failure of the board to keep informed as to the amount of funds in the bank and to prevent the sum being in excess of the proper amount will not affect the county's rights; . . . . '' (*Powell v. Board of Supervisors,* 107 Miss. 410, Ann. Cas. 1916B, 1262, 65 So. 499.)

See, also: *Bush v. Johnson County,* 48 Neb. 1, 58 Am. St. 673, 66 N. W. 1023, 32 L. R. A. 223; *Mayor and City Council of Baltimore v. Eschbach,* 18 Md. 276.

On August 1, 1921, the Citizens State Bank and the First National Bank both qualified and were, by the board, designated as depositories under the depository law. The capital stock and surplus of the Citizens State Bank were $100,000, and its bond $125,000; that of the First National Bank $120,000, and its bond $58,000. Up to that time the liability of the treasurer for money received by him was absolute. We have then the condition of the Citizens State Bank failing with $91,861.61 on deposit therein, of which $41,825.16, to the credit of the general road and bridge fund, should have been theretofore applied to the payment of outstanding warrants, or against which outstanding warrants existed which should have been long prior thereto called by the treasurer, and a balance of $50,036.45 which, together with $20,000 deposited in the first National Bank, constituted a total of $70,036.45, funds of the district subject to deposit under the depository law, without reference to the $41,825.16 above mentioned.

The depository act prohibits the treasurer's giving a preference to any one or more designated depositories in the amount he may deposit, and requires him to keep deposited with each designated depository, as nearly as practicable, such proportion of the total deposits as the capital and surplus of such bank bears to the total capital and surplus of all designated depositories. On the basis of their capital stock and surplus and bonds, $18,201.75 of the $50,036.45 mentioned above should have been deposited in the First National Bank. The contention, as a defense, that whatever ratable division of these funds was made, if any, was made by the board or the secretary thereof, and not by the ap-

pellant Allred, and that the board was familiar with all the facts relative to said deposits and the division thereof, is answered by what has been said herein as to his receipt of all the funds, and the duties of the treasurer, and the lack of power of the board to waive the performance of those duties or relieve the treasurer by such waiver.

The contention that these depository bonds were not deposited with the county auditor until December 12, 1921, after the Citizens State Bank had failed, is not material, as the deposit of the bonds with the county auditor was not a condition precedent to their becoming effective.

Appellants make the inconsistent defense that these moneys were trust funds because they were in the bank before the depository bonds were approved, or the banks became legal depositories, and, on the other hand, that the banks were legal depositories, and, therefore, that the district must seek recovery from the bank and its bond as a depository before it can recover from the appellants. Counsel, in their argument, confuse the right of the district to recover what the law deems a special deposit or trust fund, with the effect of making such a deposit on the liability of the treasurer in case of its loss. The fact that the district may have a right to recover the money as a trust fund does not release the treasurer from his liability for its loss or to account for the money. If it was a trust fund, it was such because deposited contrary to authority of law. It is unnecessary, in the absence of others who have perhaps a vital interest in the question, to determine whether, as to the district, any part of these funds was a special deposit or a trust fund, and we do not determine that question. Neither of these defenses can avail the appellants, nor do we need to put it upon the ground of their inconsistency, for if the deposits were special deposits or trust funds by reason of the banks' not being legal depositories, or if the appellants cannot claim the protection of the depository law, there is an absolute liability of appellants to account for the money, and if it was covered by the bond, then it was lost, and the violation of trust and law by the treasurer in leaving funds

in the bank which should have been paid out on called warrants, or apportioned to the First National Bank, contributed to the loss, for which the treasurer is liable.

The duty of the treasurer was as much to pay the warrants as it was to call them. The allegation that the warrants would not have been paid if called is no defense. Allred elected not to pay them when he did not call them. It will be presumed that if he had called the warrants, they would have been paid. At least, there is no showing that they would not have been paid if the treasurer had been someone other than Allred, who, at the same time, was cashier of the bank, and refused to pay them.

Appellants contend that the commissioners agreed that the bank pay these warrants to the original holders thereof, and borrow the money from outside sources for the purpose of so paying; that the bank's so treating the warrants, having on deposit moneys of the district, was in legal effect the payment of the warrants; that the Citizens State Bank in effect paid many of these warrants, and thereafter sold or assigned them to some other party, or held them itself, or deposited them with others as security; that these warrants are not negotiable instruments; and that, by this method of handling them, they are now paid warrants, and thus not outstanding obligations of the district. The record does not support this statement, nor, as hereinbefore recited, does it appear that the banks did pay these warrants to the original holders, but that warrants which had been presented and not paid for want of funds were purchased by various banks and other parties. They were not paid as payment of the debt of the district, nor is this contention supported by the law applicable to the facts. While these warrants are not negotiable instruments, they are salable, assignable and can be transferred by delivery. (*Logan County Bank v. Farmers' National Bank,* 55 Okl. 592, 155 Pac. 561; *Bardsley v. Sternberg,* 18 Wash. 612, 52 Pac. 251, 524; *National Bank of Mills & Co. v. Herold,* 74 Cal. 603, 5 Am. St. 476, 16 Pac. 507.) They were payable only out of a fund created for that purpose, and then only in the order of priority created by law as and when called for

payment.   (*Morris v. City of Sheridan,* 86 Or. 224, 167 Pac. 593.)

To constitute payment, the money or consideration must pass for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose.   (*Fremont County v. Fremont County Bank,* 145 Iowa, 8, Ann. Cas. 1912A, 1220, 123 N. W. 782.)

The bank could not have paid these warrants, or any moneys out of the funds on deposit, except on the order or check of the treasurer (Sess. Laws 1921, c. 256, sec. 17), and it would have been illegal for the bank or the treasurer to have used the district's money, which was of necessity and by law to be used to pay prior warrants, so as to discharge or pay subsequent warrants not entitled to be paid for lack of funds, and would have constituted a misappropriation of the funds.   (*Richland County v. Owens,* 92 S. C. 329, 75 S. E. 549.)

The provisions of the depository law itself would negative any intention that one buying a warrant which had been registered "not paid for want of funds," and which had not actually been paid by the treasurer from the district funds, had actually paid the warrant.   Sess. Laws 1921, c. 256, sec. 12, subd. 6, provides that warrants of a depositing unit may be deposited by a depository as security for its being made such depository.   This recognizes the right of a depository to buy warrants which have been registered but not paid for want of funds.   The bank, the payees and the various holders of these warrants are not before the court.   So far as the record discloses, each and every payee of these warrants was actually entitled to the amount, and the district had obtained value received for the warrants, and there are and were no defenses against the payees and no equities between the payees and the district pleaded or proven.   (*Logan County Bank v. Farmers' Nat. Bank, supra; Bardsley v. Sternberg, supra; Town of Manitou v. First Nat. Bank,* 37 Colo. 344, 86 Pac. 75.)

What has been determined herein makes it unnecessary to discuss appellants' contention that the district voluntarily

paid some of the outstanding warrants when under no obligation so to do.

Even though the district, in a direct action or proceeding between it and the bank, might offset its deposits against warrants held by the bank, or even by others as security from the bank, yet there is no occasion for either considering or deciding that question herein. The loss is established in contemplation of the statute, and the treasurer has failed to account for or pay over this money; the action is not premature, nor does the district have to assert and follow all or any of the rights or procedure pointed out by appellants before holding them liable on the bond. Such rights as appellants may have, if they pay the judgment rendered against them, to be subrogated to the rights of the district to assert such claims, may be determined in proper proceedings at a proper time and place. (*State v. Title Guaranty & Surety Co.*, 27 Ida. 752, 152 Pac. 189; note, Ann. Cas. 1916B, 1266; 25 R. C. L., p. 1327, sec. 13.)·

The rule that one must mitigate or make his damages as little as possible applies to the time when damages are accruing, not to his election of remedies after damages have accrued, nor does the rule require one suing upon a bond to reduce his damages by seeking recovery elsewhere first. The rule applies to damages which one can prevent, and not to damages already accrued. (*Garfield Township v. Crocker*, 63 Kan. 272, 65 Pac. 273.)

The finding that the appellant Allred, as treasurer, failed, refused and neglected to collect and pay to the district interest on daily balances of the funds of the district deposited by him, as treasurer, in the Citizens State Bank, in the sum of $2,612.88, and appropriated this sum to his own use and benefit, is not supported by the law or the evidence. The duty of the bank to pay interest upon deposits is fixed by the depository law, which requires that the interest which the depository agrees to pay shall be accredited and paid quarterly "to the account of the depositing unit and shall become thenceforth a part of such deposit"; and that the depository shall well and truly keep the money so de-

posited and the interest thereon, and pay over the ·same, and any part thereof, to the treasurer or his successor in office.   This interest was never credited to the fund or paid to the treasurer.   Allred never received that money.   There is no provision of the depository law which places on the treasurer a duty to collect and pay over interest upon daily balances, other than to account for it if and when he receives it.   To hold otherwise would make a treasurer liable even though a solvent bank failed, neglected or refused to credit the interest due to the account of the district.   That is what the depository bond is for.   The failure so to credit this interest was a failure of the bank and not of the treasurer, and that item of $2,612.88 should have been disallowed.

The failure of the appellant Allred to call the outstanding warrants when they should have been called renders him liable for interest accrued and unpaid since a date ten days after the warrants should have been called, when interest, by C. S., sec. 1549, would have ceased.   No contention is made as to the computation of that item in the findings, the contention being that appellants are not liable at all for this interest.   The finding as to that item is in accordance with the law and the evidence.

We have been unable to arrive at the same aggregate sum named in paragraph 11 of the findings, as the amount for which Allred has not accounted, or which he has not paid over to his successor, as $69,613.78.   All the items allowed total as follows:

Outstanding warrants ........................$41,825.16
Interest on outstanding warrants ..............    973.99
Interest on daily balances ....................  2,612.88
Overdeposit in Citizens State Bank ............· 18,201.75

Total ...............................$63,613.78

We have disallowed the item of interest on daily balances, $2,612.88, which, deducted, leaves the aggregate $61,000.90, to be allowed as of December 2, 1921, with interest thereon to the date of the judgment, August 24, 1923, in the sum of $7,377.72, making a total of $68,378.62, which, with the

sum of $145.90, costs taxed in the lower court, should be the amount of the judgment, and in which amount the judgment is affirmed. No costs awarded on this appeal.

William A. Lee, C. J., Wm. E. Lee, Budge and Givens, JJ., concur.