## East Tennessee Telephone Company v. Watson.

(Decided March 12, 1912.)

### Appeal from Montgomery Circuit Court.

Telephone Companies—Trade Agreement—Motion to set Aside Appointment of Receiver—Question of Compensation.—The East Tennessee Telephone Co. had a trade agreement with the

Eastern Kentucky Telephone Co. to exchange messages. Appellee Watson was appointed receiver for the Eastern Kentucky Telegraph and Telephone Co. and he filed a suit in the Montgomery Circuit Court against the East Tennessee Telephone Co. to have it restrained from disconnecting its toll lines with the exchange of the local company. The East Tennessee Telephone Co. sought to have the appointment of Watson as receiver set aside as disqualified by reason of being an interested party. Held that Section 300 of the Civil Code prohibits persons interested in the subject of litigation from being appointed receiver, but having accepted such appointment it will not be heard to complain because the court permitted him to act after objection was made, and, having agreed to accept a stipulated compensation, he will not now be heard to say that the court erred in fixing a compensation even less than that agreed to by appellant. If these toll receipts were not a trust fund in the hands of the home company, the mere appointment of a receiver for the company cannot make them such.
Judge Winn not sitting.

J. M. STEVENSON for appellants.

ROBERT H. WINN for appellee.

Opinion of the Court by Judge Lassing—Affirming.

On his own motion, Henry Watson was appointed receiver for the Eastern Kentucky Telephone & Telegraph Co., a corporation owning a telephone exchange in the city of Mt. Sterling, Kentucky. Watson was not only a creditor of said corporation, but was an officer and director of the company. The East Tennessee Telephone Co., at that time and for some time prior thereto had a trade agreement or arrangement with the Eastern Kentucky Telephone Co., by which they interchanged messages upon an agreed basis, and at the time of this receivership proceeding the local corporation was indebted to the East Tennessee Company in a sum in excess of $1,500. After his appointment as receiver Watson filed a suit in the Montgomery Circuit Court against the East Tennessee Telephone Co., in which he sought to have said company enjoined and restrained from disconnecting its toll lines with the exchange of the local company. This suit for injunctive relief was consolidated with the receivership suit, and no disposition has been made of that branch of the case, but the East Tennessee Telephone Co. has continued its connection with the local company as it theretofore existed. Shortly after his ap-

pointment as receiver, the East Tennessee Telephone Company, through its representatives, appeared in court and sought to have the appointment of Watson as receiver set aside, on the ground that he was an interested party and therefore disqualified from acting. Thereafter the motion to have Watson removed was withdrawn and an agreement between the East Tennessee Telephone Co. and Watson, as receiver, was filed in court and made part of the record. That agreement, so far as material to the questions raised upon this appeal, is as follows:

"This cause coming on to be heard upon the motion of the East Tennessee Telephone Company and the American Telephone & Telegraph Company to remove the said Watson as receiver of the defendant company, and likewise upon the motion of said Watson for an allowance for his services herein, and upon the consideration thereof, the parties having arrived at an agreement and understanding, it is now agreed that said motions for the removal of said Watson be withdrawn, and that he be permitted to act as receiver, upon the condition that he receive as commission out of said trust, the sum of forty dollars per month from the time when he was appointed to this date, and at the same rate for future services."

This receivership extended over a period of seventeen months, from September 20, 1908, until February 21, 1910. During that time he collected on account of toll service for the East Tennessee Telephone Co. $687.56. These tolls, so collected, were used by the receiver, along with other monies coming to his hands, to defray the operating expenses of the company.

On February 21, 1910, all of the physical property of the insolvent local corporation was sold by the master commissioner for $750. Out of this sum the court costs and commissioner's charges, amounting to $266.68, were paid, and there remained a balance of $485.32. There was in the hands of the receiver on said date the sum of $183.90. In fixing the compensation for the receiver the court permitted him to retain this amount and directed the commissioner to pay him out of the money in his hands the sum of $301.42, making a total of $485.32, which was the balance of money realized by a sale of the physical property of the local corporation.

To the order and judgment of the court allowing the receiver $485.32 for his services for this seventeen months the East Tennessee Telephone Co. objected. Its

objection being overruled, it prayed and was granted an appeal, and now seeks a reversal upon three grounds, first, because, being a party in interest, his appointment was unauthorized; second, if authorized, that he is not entitled to any compensation whatever, and third, that the funds belonging to it which came to the hands of the receiver were held by him in a trust or fiduciary capacity, and he had no right to spend this money for the up-keep of the plant, and that, inasmuch as he did so, he should be required to return it into court before being allowed any compensation whatever for his services.

Section 300 of the Code expressly prohibits persons interested in the subject of a litigation from being appointed receiver. It is conceded that appellee was not only interested as a creditor, but was also an officer and director of the company, and, under normal conditions, should not have been appointed receiver. But it does not lie in the mouth of appellant to make this charge. It stands in no better position than it would if his appointment had been made upon its motion, for, in the agreed order above quoted, it expressly consented that he might continue to act, and, having so consented, it will not now be heard to complain because the court permitted him to act after objection was made. The same is true as to his compensation. Appellant, at the time the court had this matter under consideration, participated in the conference in which the compensation of appellee as receiver was fixed at $40 per month. Having agreed that he should receive a stipulated compensation, he will not now be heard, after the service is rendered to say that the court erred in fixing as compensation a sum even less than that agreed to by appellant.

Lastly, it is urged that, under the agreement which the appellant company had with the company for which appellee was acting as receiver, the monies which he received belonging to it were held by him in a trust or fiduciary capacity, and that he should not have expended said monies in the up-keep of the plant, and that, having done so, no compensation should be allowed him whatever until this fund is returned by him to court or paid over to appellant. The contract under which these two telephone companies operated provides that—

"The parties of this contract mutually agree to make physical connection between their systems at Mt. Sterling, Ky., and at such other points reached by lines of

both parties of the contract as may hereafter be agreed upon, and agree to transmit each other's messages over the lines so connected. The revenue from these joint messages to be prorated between the parties of this contract in such proportion as each parties lines bear to the whole length of the line over which these messages are transmitted."

Under this arrangement each company kept an account of the messages transmitted, and at the end of the month the accounts would be audited, the difference ascertained, and the balance due either company charged as a debt against the other. In this way the business had been conducted from the beginning, and the receiver, who merely represented the home company, continued to transact the business with the appellant company in exactly the manner in which it had theretofore been conducted.

A part of the charges against the receiver are for rentals due on "transmitters" and "receivers" and a part for toll service. The transactions between the appellant company and the receiver were not unlike those between merchants having mutual accounts. The relations were simply those of debtor and creditor. No trust relation existed. Neither company could know how much of the money received by it belonged to the other until their accounts were cast at the end of the month, and it probably would frequently happen that all of the money received during any one month by the receiver would belong to his company, and as he had no means of ascertaining how the accounts stood until the end of the month, it could hardly be claimed that he should have kept all of the receipts intact until it should be determined just what part his company was entitled to of the tolls so collected before he could use any part thereof toward defraying the operating expenses of the company. The parties themselves did not, prior to this receivership, treat the receipts by the home company of tolls due appellant as a trust fund; but, on the other hand, the pleadings and accounts show that they were looked upon as any other debt. If these toll receipts were not a trust fund in the hands of the home company, the mere appointment of a receiver for the company can not make them such. Not being entitled to a preference, appellant is in no position to complain of the allowance made to the receiver.

Perceiving no error in the judgment, it is affirmed.

Judge Winn not sitting.