STATE OF IOWA, Appellee, v. MARGARET K. CHILDERS, Appellant.

INDICTMENT AND INFORMATION: Amendment—''Matter of
1 Form'' Illustrated. An indictment charging that a bank official
▲''did accept a renewal of a deposit'' while. the bank was insolvent may
be so amended as to charge that the defendant ''did renew certificates
of deposit,'' there being no question but that the original indictment
and the amendment referred to the same certificates.

BANKS AND BANKING: Fraudulent Banking—Unincorporated Bank
2 —Solvency of.Partners. The State, in prosecuting a managing officer
of an unincorporated bank owned by various persons as partners, for
receiving deposits at a time when the bank was knowingly insolvent, is
under no obligation to show that the various individual partners were
insolvent; *but the solvency of said partners may be admissible on the
issue whether the defendant had knowledge of the insolvency of the
bank when the deposits were received by him.*

BANKS AND BANKING: Fraudulent Banking—Knowledge of In-
3 solvency—Evidence. The statement. of a mere employee of a bank,
made long prior to the closing of the bank, and inferentially reflecting
his belief that the bank was insolvent, is wholly inadmissible against
an accused on the issue of knowledge of the accused of the insolvency
of the bank, no attempt being made to connect the accused with the
statement.

BANKS AND BANKING: Fraudulent Banking—Insolvency—Opinion
4 Evidence. In a prosecution for receiving deposits with knowledge
that the bank was insolvent, the value of the assets of the bank may be
proven by any witness who is familiar with such assets and knows the
value thereof.

Headnote 1: 7 C. J. p. 583 (Anno.); 31 C. J. p. 829.. Headnote 2: 7
C. J. p. 585 (Anno.)  Headnote 3: 7 C. J. p. 584; 16 C. J. p. 579.  Head-
note 4: 7 C. J. p. 584; 16 C. J. p. 748.

Headnote 1: 14 R. C. L. 193.

*Appeal from Clarke District Court.*—H. H. CARTER, Judge. .

FEBRUARY 8, 1927. ·

Margaret K. Childers, cashier of the Woodburn Bank, was
indicted, tried, and convicted of the crime of accepting deposits
when the bank was insolvent, and sentenced to the penitentiary

for an indeterminate term of not to exceed ten years. From this judgment she appeals.—*Reversed.*

*O. M. Slaymaker* and *R. E. Killmar,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *M. R. Stansell,* County Attorney, and *V. R. McGinnis,* for appellee.

STEVENS, J.—I. The Woodburn Bank was a copartnership, composed of appellant and numerous other persons. The bank closed at the usual time for closing on the afternoon of March 14,

1. INDICTMENT AND INFORMATION: amendment: "matter of form" illustrated.

1925, which was Saturday, but did not open for business on Monday morning, nor at any time thereafter. On the date referred to, Nellie Sharp, who was the holder of some certificates of deposit aggregating $2,433.10, issued by the Woodburn Bank, presented the same for renewal, and a renewal certificate for the above sum was issued and delivered to her by the defendant. The indictment charged that the bank was insolvent when these certificates were renewed.

The original indictment charged that the defendant "did * * * accept a renewal of a deposit, * * *." The county attorney was permitted to amend the indictment so as to charge that the defendant "did * * * renew certificates of deposit * * *." Other changes in the phraseology of the indictment in no manner altered its effect. The amendment and the original indictment refer to the same certificates. The amendment was in a mere matter of form, and amounted to nothing more than a change of the phraseology to more clearly express the identical thing charged in the original indictment, and in no manner prejudiced the substantial rights of the accused. The amendment was within the provisions of Section 13744, Code of 1924. *State v. Kiefer,* 183 Iowa 319; *State v. Foxton,* 166 Iowa 181; *State v. Render,* 203 Iowa ——.

II. The defendant offered a financial statement bearing date February 17, 1923, of the financial condition of M. J. Keller, one of the partners. The defendant also sought to intro-

2. BANKS AND
BANKING:
fraudulent
banking: un-
incorporated
bank: solvency
of partners.

duce testimony to show that certain, if not all, of the partners were solvent on March 14, 1925. The financial statement was excluded, and the offer of testimony to show the solvency of the partners refused. The exclusion of this testimony is one of the main propositions urged by appellant for reversal. It is contended in this connection that it was incumbent upon the State to allege and prove not only the insolvency of the bank, as such, but also of the individual partners. It is conceded that this contention is in conflict with the rule heretofore announced by this court. The obvious purpose of the legislature in enacting Sections 9279 and 9280, Code of 1924, was to provide for the punishment of persons engaged in the banking or other business in which deposits of money are received, who accept or receive the same when insolvent. The business of banking is one of trust and confidence, in which the deposit of money is solicited and received under an implied promise to return to the depositor its equivalent in cash upon demand. The question is not whether the assets of the parties, together with the assets of the entity, are of sufficient value to ultimately satisfy the claims of creditors in full. It is the settled rule in this state, as well as in other jurisdictions, that a bank is insolvent when it is unable to pay its depositors and other creditors in the usual and ordinary course of business. *State v. Cadwell*, 79 Iowa 432; *State v. Carter*, 182 Iowa 905; *State v. Kiefer*, supra; *State v. Gregory*, 198 Iowa 316; *Wilkin v. State*, 121 Ark. 219 (180 S. W. 512); *State v. Cramer*, 20 Ida. 639 (119 Pac. 30); *State v. Myers*, 54 Kan. 206 (38 Pac. 296); *People v. Dubia*, 289 Ill. 276 (124 N. E. 537).

"Actual loss to the depositor is not necessary, where the statute does not in terms require it. * * * A deposit is lost, within the meaning of such a provision, when it is not paid as required by the implied contract between the depositor and the bank, because of the bank's insolvency, and such a loss may occur although part or all of the deposit may ultimately be paid out of the assets of the bank or by its stockholders." 2 Cyclopedia Criminal Law, Section 1297.

Section 9280 of the Code of 1924 provides that:

"If any such bank * * * company * * * or person shall receive or accept on deposit any such deposits, as aforesaid,

when insolvent, any owner, officer, director, cashier, manager, member, or person knowing of such insolvency, who shall knowingly * * * renew any certificate of deposit, * * * shall be guilty of a felony, * * *.''

We have repeatedly held, under the foregoing section of the Code, that the burden is on the State to prove the insolvency of the bank, and also the defendant's knowledge thereof. *State v. Dunning,* 130 Iowa 678; *State v. Kiefer,* supra. In some jurisdictions, to prove the insolvency of a private bank, the insolvency of the parties must be established. In the jurisdictions in which this rule prevails, a partnership is not recognized as a distinct and independent legal entity, and this distinguishes the holding in such jurisdictions from the rule adopted in this state. *Meadowcroft v. People,* 163 Ill. 56 (45 N. E. 991); *State v. Krasher,* 170 Ind. 43 (83 N. E. 498); *In re Application of Rovnianek,* 41 Nev. 141 (168 Pac. 327); 2 Cyclopedia Criminal Law, Section 1294 *et seq.* A partnership is a legal entity in this state, and is so recognized by the statute. *State v. Kiefer,* supra; *Winter v. Pipher & Co.,* 96 Iowa 17; *Lansing v. Bever Land Co.,* 158 Iowa 693; *Lutz v. Billick,* 172 Iowa 543; *Jensen v. Wiersma,* 185 Iowa 551; *National S. P. Co. v. Smith-Jaycox Lbr. Co.,* 183 Iowa 17; *Brumwell & Co. v. Stebbins Bros.,* 83 Iowa 425. Particular emphasis was given to the character of a partnership as a legal entity, in *State v. Kiefer,* supra. We regard the rule above stated as sound, and as finally settled in this state.

Notwithstanding our previous holding, it is strongly urged by appellant that the evidence offered of the solvency of the individual partners was admissible as bearing upon the question of appellant's knowledge of the bank's insolvency. Appellant was the executive officer of the bank, and had practically complete control and management thereof. The evidence offered by the State was amply sufficient to establish both the insolvency of the bank and appellant's knowledge thereof. Proof of these particular elements of the crime, especially the latter, usually rests upon circumstances. In Illinois, a private bank is presumed to know of its insolvency. *People v. Dubia,* supra. This rule, apparently, has not been adopted in this state. *State v. Carter,* 182 Iowa 905.

The Woodburn Bank, as stated, was not owned by the appellant alone, but by her and numerous other individuals asso-

ciated with her as partners in the business. The admissibility of evidence of the solvency of the partners in behalf of a defendant in a prosecution for fraudulent banking is intimated, but not specifically held, in *State v. Kiefer* and *State v. Carter,* supra.

So far as the record shows, there was no failure on the part of the Woodburn Bank to pay depositors upon demand, prior to its closing. It was, however, heavily indebted, and much of its assets was pledged as security for its indebtedness. Nevertheless, appellant might have supposed the remaining partners, or some of them, solvent, and that their solvency would enable the bank to open on Monday morning and to insure the continuation of its business. This evidence, under the facts disclosed by the record, might, however, be of doubtful value to appellant; but, in other cases and under other circumstances, it might conceivably be a determining factor. We are confronted at this time with the question of the admissibility of the evidence in prosecutions of this character, and not with the question as to what might be its actual value in a given case. That it was admissible, we think clear. The financial statement offered in evidence was too remote in point of time in itself to have any probative value. It did not tend to prove the financial condition of the partner on the date the deposit was received.

III. One Reinig, who was at the time of the trial receiver of the bank, was employed for about a year prior to March 14, 1925, to make collections and secure adjustments of its bills receivable. He had no part in the management or conduct of the bank's business, but appears to have been familiar therewith and with its condition. A witness by name of Emma Coday was permitted to testify, over the objections of the defendant, that Reinig approached her in February with the solicitation that she exchange certain certificates of deposit held by her for a mortgage for $3,500, and that, in the course of the conversation, he said to her that "she had better take the mortgage than nothing." The defendant was not present when this conversation occurred, nor is there anything in the record to indicate that she was in any sense responsible therefor. Even if it be conceded to have been the statement of the honest opinion of Reinig, it was in no sense binding upon the appellant. We can-

3. BANKS AND BANKING: fraudulent banking: knowledge of insolvency: evidence.

not assume that the testimony was not prejudicial. The evidence was inadmissible for the purpose of showing knowledge on the part of appellant that the bank was insolvent, or to show actual insolvency. It was the mere expression of the opinion of the witness.

IV. A motion was made at the close of the State's case, and renewed at the conclusion of all the evidence, to direct a verdict for the defendant. None of the grounds of the motion were good, and it was properly overruled.

The only remaining assignment to which it is necessary to refer is the testimony of the witness Bowen. This witness was interrogated as to the value of certain bills receivable and other assets of the bank. We think the competency of the witness was shown, and that it was permissible for the State to prove the value of the bank's assets, so far as the witness was familiar therewith, by his testimony. Whether the questions were always appropriately framed may be open to some question, but, in view of a reversal upon other grounds, this is not very material.

4. BANKS AND BANKING: fraudulent banking: insolvency: opinion evidence.

For the errors pointed out, the judgment is reversed.— *Reversed.*

EVANS, C. J., and FAVILLE and VERMILION, JJ., concur.