## Commonwealth ex rel. Denny, Banking Commissioner, v. Hargis Bank & Trust Company et al.

(Decided March 26, 1930.)

J. W. CAMMACK, Attorney General, and J. M. GILBERT, Assistant Attorney General, for plaintiff.

HENRY L. SPENCER, W. A. STANFILL and A. FLOYD BYRD for defendants.

Opinion by Judge Dietzman—Directing an order for a temporary injunction.

The Hargis Bank & Trust Company is a banking institution incorporated under the laws of this state and doing business at Jackson, Ky. On February 6, 1930, it closed its doors, posted a notice thereon that it was closed for business, and has ever since failed and refused to pay its depositors in the ordinary and usual course of banking business. Thereafter, O. S. Denny, the banking commissioner of this state, undertook to take possession of this bank and its assets for the purpose of liquidation. The bank and its officers offered no objection to an examination of the bank, which the banking commissioner then made, and although at first offering some objection to his taking possession of the bank, later conceded his right to take mere physical possession, but contested his right to take possession for the purpose of liquidation. They therefore refused to turn over to the banking commissioner the combination to the vault of the bank and to surrender to him the assets of the bank for purpose of their administration in liquidation. The banking commissioner then brought this suit for an injunction enjoining the bank and its officers from interfering with him in his efforts to take possession of this bank for the purpose of liquidation and to require them to turn over to him and any liquidating agent he might appoint the combination of the safe and the assets of the bank for the purpose of liquidating the bank's affairs. The bank and its officers filed a demurrer to the petition, and without waiving that demurrer an answer in which they denied the right of the banking commissioner to liquidate the bank in the absence of action on the part of the directors putting the bank into the hands of the banking commissioner for liquidation, and in which they took the position that his only remedy was to go into court and ask for a receiver. By intervening petitions which they asked to be taken as answers and counterclaims, the stockholders of the bank and about three-fifths in amount of the depositors of the bank denied the right of the banking commissioner to liquidate the bank, because it had not been put in his hands for that purpose by the directors of the bank, and asked that a receiver be appointed. All of the answers denied that the bank was insolvent. The trial court sustained the demurrer to the petition and refused the temporary injunction asked on the

ground that the bank not having been put into the hands of the banking commissioner by its directors, he had no authority to liquidate it himself or through a liquidating agent, but was relegated to a suit in chancery for the purpose of having a receiver appointed. The case is now before me on motion of the plaintiff to grant the temporary injunction refused by the chancellor.

The office of banking commissioner was created by chapter 4 of the Acts of 1912 and therein are prescribed his duties and obligations. That act is now sections 165a-1 to 165a-22, inclusive, of the Statutes. In the case of Cartmell v. Commercial Bank & Trust Co., 153 Ky. 798, 156 S. W. 1048, 1051, this act was before this court for construction. In the opinion written by Judge Lassing may be found a very elaborate analysis of the act and a discussion of its purposes. In speaking to this matter of insolvent banks, the court, speaking through Judge Lassing, said:

"From the detailed manner in which the Legislature has dealt with the subject, it was undoubtedly intended that the procedure, looking toward the closing of insolvent banks and their liquidation, was to be under the supervision of the banking commissioner and to obviate the necessity of going into a court of chancery to procure the appointment of a receiver in order to wind up the affairs of insolvent banks. Indeed, there is no necessity for a receiver, when the banking commissioner proceeds as directed by the provisions of this act, for, when he takes charge of a bank, all of his acts are such as might properly be discharged by a trustee or other person or officer occupying a fiduciary position. The object and aim of the law, in the appointment of a receiver, is to see that the assets of the institution, in charge of which he is placed, are properly, honestly, and economically administered. The ends of the law are satisfied, if the estate is administered in this way, whether the person charged with its administration be termed a banking commissioner, a trustee, or an assignee. The duties are the same. If any difference is to be found, it is in favor of the liquidation of banks, through and under the direction of the banking commissioner, rather than under a receiver appointed by the court. . . . In all cases where, by legislative enactment, a mode of procedure is prescribed for the doing of an act or accomplishing a

particular purpose and the question is raised as to whether or not such mode of procedure is exclusive, it is important to determine, from the act, the legislative intent. When the act under consideration is read with this end in view, it would seem that it was not within the contemplation of the Legislature that another mode of procedure should be adopted or followed, for the act plainly provides that, when a bank is found to be insolvent, the commissioner himself may take charge with the view of winding up the affairs of the bank, or a majority of the board of directors may sign and post the notice above referred to and in this way place the institution in the hands of the commissioner for liquidation, or if, in the judgment of the commissioner, it is a question as to whether or not the bank's affairs are in such condition as would warrant its liquidation, he may go into a court of equity and ask the guidance and direction of the chancellor as to whether or not he should close it.''

From this excerpt of the Cartmell case, it will be seen that the court was of the opinion that the procedure provided by the act of 1912 for the liquidation of insolvent banks was exclusive. While it is true section 4 of the act (Kentucky Statutes, sec. 165a-4) provided that all of the duties imposed upon the secretary of state with reference to banks at the time the act of 1912 became effective were imposed on the banking commissioner, and while it is true that by section 616 of the Statutes, being part of the act of 1893, the secretary of state was authorized to liquidate insolvent banks through the method of a recceivership, it is plain that by the elaborate procedure provided for the dissolution of insolvent banks by the act of 1912, the old procedure to that extent was meant to be superseded. Section 4 of the act of 1912 meant no more than that the duties theretofore imposed on the secretary of state should be carried out by the banking commissioner except in so far as they were superseded by the act of 1912. A later law that is inconsistent with an earlier law, or is meant to supersede such earlier law, always repeals by implication the provisions of the earlier law. The Cartmell opinion is undoubtedly sound when it says that the method of procedure for the liquidation of insolvent banks set up in the act of 1912 is exclusive. While it is true that in the Cartmell case

the bank was placed in the hands of the banking commissioner as is provided by section 18 of the act (Kentucky Statutes, sec. 165a-18), yet the court did say in the Cartmell case that the banking commissioner on his own initiative had the right, when he deemed a bank insolvent, to take charge of it for the purpose of liquidation. Though perhaps dicta in the Cartmell case, we regard this interpretation of the act as sound. It is true that section 16 of the act (Kentucky Statutes, sec. 165a-16) does not say in express terms that the banking commissioner shall, if he deem a bank insolvent, take charge of the bank and its assets for the purpose of liquidation, yet when that section is read with the manifest purpose and intent of the act in mind and in connection with section 17 thereof (Kentucky Statutes, sec. 165a-17), it is clear to us that the provisions of section 16 mean that when the banking commissioner deems a bank insolvent he may take charge of it and its effects for the purpose of liquidation. For instance in section 17 of the act, it is provided that whenever, under the provisions of the act, *"the banking commissioner . . . shall take charge of any bank,"* or the court appoints a receiver, the person in charge of the bank or the receiver shall be allowed a certain salary *"for the time actually engaged by him in labor in the liquidation of the bank."* This section further provides that whenever *"the banking commissioner . . . shall take charge of any bank,"* under the provisions of the act, he shall within 30 days thereafter file, in the office of the clerk of the circuit court of the county in which the bank is located, a detailed statement of the assets and liabilities of the bank, and thereafter, on the first day of each term of the court, he shall file a report of his acts and doings in the administration of the bank since his last report which are subject to review on exceptons as they would have been had the banking commissioner been a receiver appointed by the court. Then there is prescribed a detailed procedure as to what the banking commissioner shall do, all of which is manifestly a part of his duties in the liquidation of the affairs of the bank. In prescribing his duties with reference to liquidating a bank, the statute couples the provisions with the phrase, "whenever (he) . . . shall take charge of any bank under the provisions of this act." It is clear, therefore, that the Legislature intended by the expression "he shall take charge of any bank" to convey the idea that "the taking charge" was for the purpose of liquidation.

Hence this meaning must be given this phrase in section 16 of the act, and this being so, the Legislature invested by Kentucky Statutes, sec. 165a-16, the banking commissioner with the power to take charge of a bank incorporated under the laws of this state for the purpose of liquidation when he deems it insolvent.

It is argued, however, that such an interpretation if given to the act will render it unconstitutional, since the banking commissioner would then be vested with judicial powers to determine whether or not a bank is insolvent and the bank would be deprived of its property without due process of law, in that no opportunity would be afforded it to contest in court the question of its insolvency. The act is not unconstitutional on the grounds asserted. By section 191 of title 12 of the United States Code Annotated, it is provided that the Comptroller of the Currency, on becoming satisfied of the insolvency of any national bank association, *may himself appoint* what the act calls a ''receiver,'' but who is the same as a liquidating agent under the act of 1912 herein involved, since he is a receiver appointed by the Comptroller and not by a court. Section 191 further provides that such receiver has the power to close up the bank and to enforce personal liability of the shareholders. In the case of Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598, the same contention was made as to the constitutionality of the National Banking Act as is now made with reference to our act of 1912 as herein construed by us. Justice White, speaking for the court, and citing a long line of cases, held that there was no merit in the contention and that to vest the Comptroller of the Currency with the power to determine whether a bank is insolvent or not does not vest him with judicial powers within constitutional inhibitions. Nor is the bank deprived of its right to be heard as to whether it is insolvent or not. Two lines of procedure suggest themselves. First, the act itself provides that within 30 days after the banking commissioner takes charge, he must file in court a report of the assets and liabilities of the bank. If his report shows the bank to be insolvent, it is subject to exception by the bank and it may then and there have determined whether it is insolvent or not. If it is not, the court will of course restore to the bank possession of its property. The other line of procedure is for the bank to bring an injunction suit to enjoin the banking commissioner from taking possession of the bank. In such an action, it can be deter-

mined whether the bank is insolvent or not. We are therefore of the opinion that the act is not unconstitutional on the grounds asserted and that the banking commissioner has the right, if he deems the Hargis Bank & Trust Company insolvent, to take charge of it for the purpose of liquidation.

It is insisted, however, that the bank was not insolvent, and the case of Parrish v. Commonwealth, 136 Ky. 77, 123 S. W. 339, is relied upon. That was a criminal proceeding, and it was there held in substance that before an officer of the bank could be convicted for receiving deposits while the bank was insolvent, it would have to be shown that the assets of the bank were less than its liabilities. It is insisted by the defendants in this case that if that definition of insolvency be applied to the facts of this case, the Hargis Bank & Trust Company is not insolvent. As no proof was introduced on this issue since the case went off on a demurrer to the petition, the defendants ask that if it be held that the banking commissioner has the right to take charge of the bank for purposes of liquidation if it be insolvent, they be given opportunity to be heard on this question of insolvency in order that they may show that the assets of the bank exceed its liabilities. There is a well-defined distinction running through the cases between a definition of "insolvency" for criminal cases and a definition of "insolvency" for cases involving the winding up of the affairs of a bank in a distressed condition. See White v. State (Okl. Cr. App.) 252 P. 455. While in a criminal case the definition of "insolvency" is usually that found in the Parrish case, yet, where the term is not defined by statute the definition given it in cases involving insolvency laws of banks is by the overwhelming weight of authority to the effect that a bank is insolvent when it is not in a condition to pay its debts and depositors in the usual and ordinary course of business. Steele v. Commissioner of Banks, 240 Mass. 394, 134 N. E. 401, 20 A. L. R. 1203; State v. Childers, 202 Iowa 1377, 212 N. W. 63. See also a collection of the authorities in Morse on Banks and Banking (6th Ed.) sec. 622, and 4 Words and Phrases, Third Edition, 324. Applying this definition to the facts in this case, we find that it is not denied that this bank cannot pay its depositors in the usual and ordinary course of business. In fact, that is admitted, which, being true, the bank is insolvent within the meaning of the act of 1912, and therefore it is not necessary to hear evidence as to

whether in the liquidation of its affairs its assets may turn out to be more than its liabilities.

It follows, from what I have said, that the temporary injunction asked for by the plaintiff should have been granted, and the chancellor is directed to enter such an order of injunction.

The whole Court sat with me in the consideration of this case and concurs in these views and this order.