# Wilson, Banking Commissioner v. Louisville Title Company et al.

(Decided June 24, 1932.)

WM. G. DEARING and J. M. ROBISON for appellant.

WM. MARSHALL BULLITT and T. KENNEDY HELM for appellee Fidelity & Columbia Trust Co., receiver of Louisville Title Co.

ANDREW M. SEA, JR., for Louisville Title Co.

BAILEY P. WOOTTON, Attorney General, for Insurance Commissioner.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The state banking commissioner sought to intervene and take charge of an action begun by the insurance commissioner of the state of Kentucky to settle the affairs of the Louisville Title Company, he was not allowed to do so, and he has appealed.

On June 23, 1931, the directors of the Louisville Title Company by resolution placed it in the hands of the insurance commissioner of Kentucky, and upon petition of the latter the Fidelity & Columbia Trust Company was on that day appointed receiver of it, and on July 9, 1931, the powers of said receiver were extended and enlarged, and since its appointment it has been actively engaged in collecting, conserving, and administering the assets of the said title company, under orders of the court.

On October 23, 1931, the banking commissioner of Kentucky filed his petition asserting what he alleges to be his exclusive right to administer the affairs of the title company, and on that day he tendered and offered to file his answer and counterclaim in the action brought by the insurance commissioner and asserted what he conceives to be his exclusive right to wind up the title company's affairs. The insurance commissioner objected to the filing of both these papers, his objections

to the filing of the answer and counterclaim were sustained, and it was not allowed to be filed; his objections to the filing of the petition of the banking commissioner were treated as a demurrer thereto, and sustained, and that petition was dismissed.

The powers and duties of the banking commissioner are those set forth in Ky. Stats., sec. 165a-1 to sec. 165a-22 inclusive, and those of the insurance commissioner are found in Ky. Stats., sec. 744 et seq., with the addition of those conferred by section 199a-1 and section 736, Ky. Stats. An examination of these will show the banking commissioner's jurisdiction is exclusive over banks. This court has so held. Cartmell v. Commercial Bank, etc., 153 Ky. 798, 156 S. W. 1048; Commonwealth, etc., v. Hargis Bank, etc., 233 Ky. 801, 26 S. W. (2d) 1045.

The jurisdiction of the insurance commissioner is limited to matters of insurance. The question is: Did the nature of the business of the Louisville Title Company require that it be classed as a bank or as an insurance company? That question was before this court in Hager v. Louisville Title Co., 85 S. W. 182, 27 Ky. Law Rep. 345; and there it was said:

> "The appellee is unlike a bank, as it cannot receive deposits, sell exchange, etc. Neither is it like a trust company. In fact, it is authorized to transact an entirely different character of business from the companies mentioned in section 4077."

Without the happening of something to change that status, then the Louisville Title Company was not a bank. This decision was made in 1904, and since then important changes have been made in the law. See sections 883c-1 to 883c-3, inclusive. In 1926 (see chapter 19, p. 105), the Legislature amended and re-enacted sections 728, 733, and 734, Ky. Stats., which amendment is more fully set out later in this opinion. Corporations such as the Louisville Title Company were by these statutes permitted to do a general banking business, a trust company business, and a real estate title insurance business, to act as trustee under mortgages, etc., and in this answer and counterclaim it is alleged:

> "That at the time said Louisville Title Company closed its said doors and quit its said business, it owned, held and possessed cash, mortgages

secured by real estate, notes, bonds and other securities used in and belonging exclusively to its said banking and trust business, and amounting to about eighteen million dollars.''

In the petition of the banking commissioner it is alleged:

"That it has been engaged in a general banking, trust and insurance business from the time of its organization until the 23rd day of June, 1931."

These are conclusions only, but the petition goes further and sets out what the title company was doing as follows:

"Loaning money, taking mortgages on real estate to secure same, buying and selling mortgages, notes, bonds and other securities."

Does this constitute banking, and was the Louisville Title Company, if so engaged, a bank?

A "bank" is ordinarily understood to be an association or corporation whose business it is to receive money on deposit, to cash checks or drafts, to discount commercial paper, and to make loans. That is what the average reasonable man understands a bank to be. Section 883c-1 indicates the Louisville Title Company had the power to do those things, but there is no allegation that it did them.

The banking commissioner says section 165a-1 of the statutes of this state defines the word "bank" thus:

"Unless otherwise stated the words 'bank' or 'banks' herein used shall include all banks, trust companies, savings banks, combined banks, *real estate mortgage companies engaged in the business of making mortgage loans on real estate and the selling and offering for sale to the public (of) evdiences of such loans, whether notes, or bonds, or its own obligations secured by such notes or bonds*, and combined banks and trust companies."

The words we have italicized in the above definition were added by an amendment adopted in 1926 (Acts 1926, c. 20). These words the banking commissioner contends places institutions such as the Louisville Title Company under his supervision. Real estate title insurance companies were then, and had been for years, en-

gaged in the title insurance business under the supervision of the insurance commissioner making reports to him and submitting to examination by him as required by sections 735 and 736, Ky. Stats.

That the Legislature intended by the words we have italicized to take the title insurance business out of the control of the insurance commissioner and place it in the control of the banking commissioner, without making further provision for the exercise of control by the latter, does not seem reasonable.

It seems to be obvious, therefore, that the 1926 amendment of the banking act was intended, not to change the law with reference to the supervision of title insurance companies, but to bring under public supervision a form of business which has recently sprung into prominence but which had theretofore escaped such supervision because the companies conducting it were neither banks nor trust companies on the one hand, nor title insurance companies on the other hand. That the Legislature intended to make a distinction between banks, trust companies, and title companies, who were empowered to make mortgage loans and sell the notes or bonds thus secured to the public on the one hand, and "real estate mortgage companies" engaged exclusively in that business on the other hand, is shown by the fact that in 1926 (Acts 1926, c. 76), in repealing the old "Blue Sky Law" and enacting a new one in its place, it included in the list of "exempt securities," not only those of banks, trust companies, and title companies, but also those of "real estate mortgage companies" (see section 883e-3, subsection "g," Ky. Stats.), thus clearly indicating that this class of business was considered as separate and distinct from that of either a bank or a trust company on the one hand, or a title company on the other, although the latter companies might have similar powers in connection with their other business.

The Supreme Court of the United States has recently recognized the existence of such new business, and has drawn a distinction between "Real Estate Mortgage Companies" and "Title Insurance Companies." See Bowers v. Lawyers' Mortgage Co., 52 S. Ct., 350, 76 L. Ed. ——, and U. S. v. Home Title Ins. Co., 52 S. Ct. 319, 76 L. Ed. ——. Thus we know there lately has arisen this new class of business, that is, *real estate mortgage companies engaged in the business of making mortgage loans on real estate and the selling and*

*offering for sale to the public of evidences of such loans, whether notes, or bonds, or its own obligations secured by such notes or bonds.*

The Legislature regarded such concerns as proper subjects of supervision, visitation, and examination; therefore it included them in its definition of a "bank" and put them under the supervision of the state banking commissioner. At the same session, and just two days after making the above definition of a "bank," it passed another measure (Acts 1926, c. 19) entitled:

> "*An Act to repeal, amend, and re-enact sections 728, 733 and 734 of the Kentucky Statutes,* Carroll's edition, 915, same being a part of chapter 32, article 4, subdivision 7, *relating to real estate title insurance companies.*"

In amending section 728, it thus defined the powers of real estate title insurance companies and among others gave them these powers:

> "And to guarantee or insure bonds and mortgages, and the owners of real estate and chattels real, and others interested therein, against loss by reason of defects of title thereto and incumbrances thereon; *to act as trustee under mortgages or deeds of trust executed by persons, partnerships or corporations, to secure the payment of bonds where the title to the real estate included in such mortgage or deed of trust shall have been examined and approved by such title company.*"

Thus we see the powers given to such real estate title insurance companies are quite different from the business of real estate mortgage companies as set out in the statutory definition of the word "bank," and that the dominant character of the new business permitted by the new powers set out in the words italicized just above is still that of real estate title insurance and such appears to have been the dominant character of the business done by the Louisville Title Company. We must hold that real estate title insurance companies were not not included in the above statutory definition of a bank, for if such had been the intention of the General Assembly it could so easily have inserted in its definition of a bank the words "real estate title insurance companies," or it could have added to this grant of additional powers to such companies the words, "And

such companies exercising these powers shall be regarded as banks and be subject to the supervision of the State Banking Commissioner.'' It did neither, thus convincing us such was not the legislative intention.

The state banking commissioner must have had the same view, for there is no suggestion that after 1926 the banking department made any examination of or exercised any supervision over the Louisville Title Company, or any other real estate title insurance company.

The banking commissioner urges that, as the objections to the filing of his intervening petition were taken as a demurrer thereto, the allegations of his petition must be taken as true and that as he had alleged the Louisville Title Company was engaged in a ''banking and trust business,'' that must be taken as true. That statement is but a conclusion of the pleader. The exhibits filed contradict that conclusion, and in passing on the question the court will not only look at the exhibits but also the statutes. When we do this our conclusion is that the petition of the banking commissioner was properly dismissed.

It is claimed that under section 29 of the Civil Code of Practice the banking commissioner is entitled to intervene in this action, because he is claiming a right to or an interest in the property, involved, that means some sort of ownership in it; but he is not doing that, all he is asserting is a right to administer this property. That is all he claims, and hence the cited Code section is not applicable.

The judgment is affirmed.

The whole court sitting.