# Young v. Fidelity & Columbia Trust Co. et al.

(Decided March 5, 1935.)

HITE H. HUFFAKER and JOHN R. MOREMEN for appellant.

TRABUE, DOOLAN, HELM & HELM for appellee receiver, individually and as trustee.

BRUCE & BULLITT for other appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

What is before us is another chapter of the litigation resulting from the receivership of the Louisville Title Company. A number of controversies growing out of this receivership were here at previous terms, and among the cases disposing of them are Wilson, Banking Commissioner, v. Louisville Title Company, 244 Ky. 683, 51 S. W. (2d) 971; Cralle v. Louisville Title Company, 244 Ky. 753, 52 S. W. (2d) 891; Fidelity & Columbia Trust Company v. Schmidt, 245 Ky. 432, 53 S. W. (2d) 713; Masonic Widows' & Orphans' Home and Infirmary et al. v. Title Insurance & Trust Company et al., 248 Ky. 787, 59 S. W. (2d) 987; Louisville Title Company's Receiver et al. v. Crab Orchard Banking Company et al., 249 Ky. 736, 61 S. W. (2d) 615; Grand Lodge of Kentucky et al. v. First National Bank of Kentucky et al., 251 Ky. 189, 64 S. W. (2d) 474. Reference is made to these cases for a detailed account of the methods employed by the Louisville Title Company in making loans secured by mortgages on real estate, issuing bonds, and guaranteeing their payment. Cralle v. Louisville Title Company and Grand Lodge of Kentucky v. First National Bank are the only cases having any particular bearing on the present controversy. In the Cralle Case the reorganization agreement between the bondholders and stockholders of the defunct Louisville Title Company was approved. The case of Grand Lodge of Kentucky v. First National Bank was a branch of the Cralle Case. The Grand Lodge of Kentucky, Vernice R. Young, who is the appellant herein, and others filed an intervening and cross petition in the action of Lee Cralle v. Louisville Title Company, then pending in the Jefferson circuit court, in which they charged that a certain agreement between various banks of Louisville, Ky., certain directors of the Louisville Title Company, and the Louisville Title Company whereby certain bonds and notes were pledged by the Title Company to secure its indebtedness to these banks and individuals, was designed to prefer such creditors to the exclusion of other creditors and was fraudulent as to the intervening petitioners and null and void.

By the agreement, known as the "Bankers' Pool Agreement," certain directors of the Title Company agreed to loan forthwith to the Title Company $70,000, and the First National Bank, Liberty Bank & Trust Company, and the Lincoln Bank & Trust Company

agreed to advance to the Louisville Title Company from time to time a total sum not to exceed $400,-000. Prior to the pool agreement, which was entered into on April 27, 1931, the Citizens' Union National Bank had loaned to the Louisville Title Company the sum of $280,000, and the Louisville Title Company had deposited with it collateral with a face value of $413,800 as security. While this collateral was not worth its face value, the evidence is that it was amply sufficient to protect the Citizens' Union National Bank from loss. The Citizens' Union National Bank was a party to the pool agreement, and it agreed to surrender the $413,800 collateral then held by it and to extend the maturity date of the indebtedness then owing to it to January 1, 1932, and that its indebtedness should be secured, along with loans made by the other banks, by collateral, including the collateral which it then held, which was to be deposited with a trustee. The Bankers' Pool Agreement was executed at the solicitation of the Louisville Title Company, which found itself hard pressed to meet its obligations, and as it was felt by all parties concerned that conditions might change within the next few months, the agreement was executed in an effort to carry the Title Company safely over this period. The mortgagors who owed the bonds, the payment of which had been guaranteed by the Title Company, were failing to make their payments when due, and as a result the Title Company, under its guaranty, was required to redeem the bonds as they matured. It had exhausted its liquid resources and the proceeds of the loan from the Citizens' Union National Bank, and in order to continue to redeem the bonds which it had guaranteed as they matured, it was necessary for it to raise a large amount of cash. It was provided in the Bankers' Pool Agreement that as bonds were redeemed with the proceeds of the loans made by the banks and directors of the Title Company, they should be deposited with the trustee as security for the loans. The Fidelity & Columbia Trust Company was selected trustee and it became a party to the agreement. Its duty was to hold and preserve the bonds pledged under the agreement and account for the cash received therefor (1) ratably to the banks, and after the banks had been paid off (2) to the directors. The trustee was to receive for its services $100 per month.

After the Bankers' Pool Agreement was executed,

the participating directors of the Louisville Title Company advanced to the Title Company the sum of $70,000. The Liberty Bank & Trust Company advanced $59,308.-75; the First National Bank, $59,308.75; and the Lincoln Bank & Trust Company, $20,932.50—or a total of $209,550. The three banks advanced a total of $139,550 out of the $330,000 which they agreed to advance from time to time under the pool agreement. The total amount of indebtedness to the participating directors of the Louisville Title Company and to the banks, including the $280,000 which had been loaned to the Title Company by the Citizens' Union National Bank, amounted to $489,550, and the face amount of the collateral deposited with the trustee was $1,119,165.94.

The hopes and expectations of the banks and individuals participating in the pool agreement were not realized, but conditions grew steadily worse until June 23, 1931, when it became apparent to all parties concerned that the Title Company would be unable to redeem all of the guaranteed bonds as they matured, since the borrowers who were primarily obligated on the bonds were failing in increasingly greater numbers to make payments when due. On that day the Louisville Title Company closed its doors, and thereafter the Fidelity & Columbia Trust Company was appointed receiver.

On October 12, 1932, the Grand Lodge of Kentucky, Vernice R. Young, appellant herein, and others who were the owners of bonds which had been guaranteed by the Louisville Title Company, filed an intervening and cross petition in the action of Lee Cralle et al. v. Louisville Title Company et al., then pending in the Jefferson circuit court, in which the interveners charged in substance that the so-called Bankers' Pool Agreement of April 27, 1931, was fraudulent, and they asked that the pledge of collateral made to secure the payment of the loans of the Citizens' Union National Bank and of the other parties to the agreement be set aside as preferential. A pleading styled "Amended Answer, Counterclaim, Petition To Be Made Party, and Intervening and Cross Petition," was filed on January 6, 1933, and a second amended pleading was filed on February 18, 1933. In these amended pleadings Vernice R. Young and the other complaining bondholders asked that the transfer of securities to the trustee of the pool

agreement be declared null and void and that they be held for the benefit of all outstanding bondholders for whom the Louisville Title Company was trustee, and they further sought to have the appointment of the Fidelity & Columbia Trust Company as receiver for the Louisville Title Company held null and void. A demurrer was filed to the intervening petition and cross petition as amended, and it was sustained.

The judgment of the circuit court was affirmed in the case of Grand Lodge of Kentucky v. First National Bank, supra. The Fidelity & Columbia Trust Company was not a party to that appeal. Neither the Fidelity & Columbia Trust Company nor the Citizens' Union National Bank demurred to the intervening petition as amended, but both filed answers and proof was heard on the issues made by the pleadings. The case was submitted on the pleadings and proof, and the circuit court entered a judgment dismissing the answer, counterclaim, and intervening and cross petition as amended, and from that judgment the intervening petitioner, Vernice R. Young, alone appeals.

The appellant and the other intervening petitioners in the receivership suit attacked the Bankers' Pool Agreement on the ground that it was designed to prefer the participating banks and individuals and was fraudulent as to the other creditors of the Louisville Title Company. They also sought to have the Fidelity & Columbia Trust Company removed as receiver of the Title Company on the ground that it was an interested party and ineligible to appointment as receiver under section 300 of the Civil Code of Practice. In the Grand Lodge of Kentucky Case the attack on the Bankers' Pool Agreement was dismissed on the ground that the pleadings failed to state facts sufficient to constitute a cause of action against the banks which were parties to that appeal, either under section 1906 or section 1910 of the Kentucky Statutes, and further that the period within which actions must be brought under section 1910 had expired.

A careful examination of the record in this case shows that all the banks participating in the pool agreement occupied substantially the same position. It is true that the Liberty Bank & Trust Company, the First National Bank, and the Lincoln Bank & Trust Company advanced money to the Louisville Title Company at

the time the bonds were transferred by the Title Company to the trustee under the pool agreement to be held as collateral to secure the loans made by the various banks, while the indebtedness of the Title Company to the Citizens' Union National Bank had been created prior to the making of the pool agreement. However, to secure its indebtedness of $280,000 which had been created in 1930 and the early part of 1931, the Citizens' Union National Bank held collateral with a face value of $413,800 which the evidence shows had an actual value of more than $280,000, the amount of the debt. In order to aid the Title Company in obtaining additional financial assistance, it agreed to become a member of the pool and to surrender the collateral held by it and to place its loan on a par with the loans to be made by the other members of the pool, and it further agreed to extend the due date of the Title Company's indebtedness to January 1, 1932, the due date of the loans to be made by the other participating members. The evidence fails to show that it obtained any advantage by changing the collateral securing its loans or by extending the due date thereof. It was probably necessary for it to surrender the collateral held by it and to enter the pool agreement on the same footing as the other members in order to induce the other banks to sign the agreement. If, as the evidence shows, the debt of the Citizens' Union National Bank was amply secured before it entered into the pool agreement, it has gained no advantage from that agreement and no fraud was committed, nor has any preference over other creditors been obtained. In any event, since the intervening petition was filed October 12, 1932, and the pool agreement was entered into on April 27, 1931, an attack on the transfer of securities as a preference under section 1910 of the Statutes is barred by limitations. Under section 1911 of the Statutes the petition must be filed within six months after the property is transferred. Grand Lodge of Kentucky v. First National Bank of Kentucky, supra.

Appellant claims that the Fidelity & Columbia Trust Company was ineligible to appointment as receiver of the Louisville Title Company and that its appointment was void because of the provisions of section 300 of the Civil Code of Practice, which reads:

"Excepting personal representatives, guardians,

curators and committees of persons of unsound mind, neither a party to an action, nor his attorney, nor any person interested therein, shall be appointed receiver.''

This section of the Code is merely declaratory of the law applied in courts of equity in receivership proceedings. It is a rule of general application that a receiver should be a person wholly impartial and indifferent toward all parties interested in the fund to be administered. Bartelt v. Smith, 145 Wis. 31, 129 N. W. 782; Ann. Cas. 1912A, 1195; Graham v. Hundley Dry Goods Company (Mo. Sup.) 177 S. W. 600; Penn Mutual Life Insurance Company v. Cudd, 172 S. C. 88, 172 S. E. 787; M. R. Harris' Estate v. West Grove Savings Bank, 207 Iowa, 41, 217 N. W. 477. However, the appointment as receiver of a party interested in the action is not void, but voidable. Such a party may be appointed by agreement of all the parties interested in the receivership. Undoubtedly, any one in interest has the right to intervene seasonably and object to the appointment, but this is a right which can be waived. East Tennessee Telephone Company v. Watson, 147 Ky. 462, 144 S. W. 375; Gates v. Morley Twine & Machinery Company (Iowa) 170 N. W. 370; James v. Roberts Telephone & Electric Company (Tex. Com. App.) 206 S. W. 933; Boyd v. Brown, 79 Colo. 568, 247 P. 181; Barber v. International Company, 73 Conn. 587, 48 A. 758; Geyser Mining Company v. Bank of Salt Lake, 16 Utah, 163, 51 P. 151, 152; High on Receivers, sec. 81a.

In Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 274, 72 L. Ed. 457, it was claimed that a receiver had been improperly appointed, and in holding that the irregularity had been waived, the court said:

"When a receiver has been thus irregularly appointed on such a bill without objection, and the administration has proceeded to such a point that it would be detrimental to all concerned to discharge the receiver, the receivership has been permitted to continue because not seasonably objected to.''

In the instant case the Fidelity & Columbia Trust Company was not pecuniarily interested in the action and did not have such an adversary relation as disquali-

fied it under section 300 of the Civil Code of Practice. It was receiving a nominal salary of $100 a month for acting as trustee of the securities deposited as collateral to secure the loan made under the Bankers' Pool Agreement, but this did not give it an adverse interest, and, besides, it resigned as trustee under the pool agreement subsequent to its appointment as receiver. The stockholders in the Citizens' Union National Bank were stockholders in the Fidelity & Columbia Trust Company, but the Trust Company was a distinct corporation. We do not think the relationship of the Trust Company to the Citizens' Union National Bank brings it within the inhibitions of section 300 of the Civil Code of Practice; but, in any event, the administration of the receivership has proceeded to a point where it would be detrimental to the interest of all parties concerned to discharge the receiver and to appoint another unless it appears that the present receiver has not properly administered the receivership. While such a claim is made, it is not supported by the proof. So far as the record discloses, the Fidelity & Columbia Trust Company has conducted an orderly liquidation of the assets of the Louisville Title Company and has been entirely fair to all interested parties. No objection was made to its appointment until the most crucial period of the receivership had passed and long after all the facts could have been ascertained. Under the circumstances, the appellant waived any valid objections she might have had to the appointment.

The judgment is affirmed.