## Broadwell *vs* King.

CHANCERY.

ERROR TO THE HARRISON CIRCUIT.

*Lien.    Mortgages.    Vendor and Vendee.*

Case 120.

CHIEF JUSTICE EWING delivered the opinion of the Court.

*May 18.*

IN October, 1839, Corder sold to Pugh a tract of land, and executed a deed, and took Pugh's notes for the consideration.    One of the notes for $250, payable in twelve months from date, was assigned to King, in March, 1840.    In January, 1841, King filed a bill against Pugh, Corder, and one Broadwell, for the enforcement of the lien upon the land sold, for payment of the note assigned to him.    He charges Broadwell with having taken a mortgage upon the land, with full knowledge of his prior lien; sets forth the deed made by Corder to Pugh, which deed contains this recital: "Witnesseth, that the party of the first part, (to-wit: Corder and wife) for and in consideration of the sum of one thousand dollars, to them *in hand paid, and secured to be paid,* &c."

Broadwell answered, denying notice, and setting forth and relying upon his mortgage, which purports to be made a few days before the bill was filed, to secure him in the payment of five hundred and twenty-five dollars; and charges that he had purchased a short time before, from Corder, a note on Pugh for $300, which had been executed as a part consideration of the same tract of land; that he had surrendered up that note, and other claims which he held on Pugh, for a note on one Givens, which note having been forged or altered, it was given back to Pugh, the contract of assignment cancelled, and the note and mortgage to secure it executed.    The facts charged by the answer, are substantially proved, and it

is also proved by the same witness, that Corder had offered to sell him the $300 note, and stated that it was the last payment of the land sold to Pugh, and that the residue had been paid; and he informed Broadwell of this statement of Corder, before he purchased the note or took the mortgage. King charges, in a supplemental bill, filed in March, 1842, that he had purchased another note from Corder and Pugh, which had also been given as a part of the consideration for the land sold, upon which he had sued Pugh at law, and could make nothing, he having since left the State. When this last note was assigned to him, or when suit was brought on it, or what is its amount and when it was payable, does not appear, as the record of the proceedings at law, though referred to, is not copied into this record. Indeed, the case seems to be badly prepared, and the record informally and unclerically made out, and strict rule would require it to be

Decree of the Circuit Court.

condemned. The Circuit Court decreed the sale of so much of the land as would pay King's note of $250, having, at a prior term, on entering the interlocutory decree, "retained the cause as to the sum claimed by the complainant in his supplemental bill." Broadwell has appealed to this Court.

The import of the terms *"paid and secured to be paid"* in a conveyance, is equivocal.

The words "paid, and *secured* to *be paid,*" in the deed, are of ambiguous import, and susceptible of two constructions: first, that the unpaid portion of the consideration is secured by the note or bond of the vendee; secondly, that it is secured by collateral security; and the subsequent mortgagee or purchaser might honestly fall into the latter interpretation, and doing so, be prevented from making further inquiry as to the amount unpaid, under the honest conviction, that as the debt was secured the lien was discharged.

It is the duty of a purchaser or mortgagee to use diligence in ascertaining whether or not there exists a lien in favor of vendor of real estate.

We do not, therefore, feel prepared now to decide that the words in the deed, unsupported by any other extraneous fact, are sufficient of themselves to put Broadwell upon inquiry as to the unpaid residuum, or to amount to such constructive notice as to deprive him of the benefit of his mortgage. Though the words in this deed fall within the reasoning of this Court in the case reported in 5*th Monroe,* 285, the recitals in the deed in that case are

much more unequivocal than in this, and the reasoning of the Court went beyond the facts of the case, and should not form a precedent to carry the doctrine of constructive notice further than the facts in that case warranted. But Broadwell, before he took the mortgage, had purchased one of the notes on Pugh from Corder, and had procured an assignment of it to himself, and was apprised, before he received the mortgage, that it was a note for a part consideration of the land. If before, he might have been deluded by the ambiguous terms of the deed into the belief that the words *secured to be paid*, meant that collateral security was given; so soon as he received the note, and was apprised that it was for a part of the consideration of the land sold, his delusion was removed, and he was unable to understand that the words meant that the unpaid consideration was secured only by Pugh's individual note or notes; and being apprised of this fact, he was put upon inquiry, and should have honestly made it, whether there was not other notes out for the consideration, *secured* in the same way. He should, therefore, be held to the consequences of implied or constructive notice, unless he can show that he has discharged himself from them, by his subsequent conduct, and this he can only do by showing that he has, in good faith, and with due diligence, and an honest effort to arrive at truth, made inquiry of all persons from whom he could reasonably have expected to receive correct information, and thus making it, had been misinformed and deceived into the honest conviction that there were no other notes out for the consideration but the one assigned to him. This we think he has not shown that he has done. Loose information, communicated to him by a third person, before he purchased the note or took the mortgage, that Corder had said, that "it was the note for the last payment, and the residue of the consideration had been paid," will not suffice. Did he interrogate Corder himself, when he purchased the note? Did he interrogate Pugh, when he was chaffering with him for the mortgage? And if he did, was he informed by them that there were no other notes out for the consideration? And relying upon their information, who knew best, was he deceived

into that conclusion without negligence or fault on his part? These facts are not shown. We cannot therefore think, that he stands acquitted in good conscience, or discharged from the consequences of his implied notice.

But we think the Circuit Court erred to his prejudice, in not allowing him a ratable share of the lien for the amount of the $300 note assigned to him.

Each of the several assignees of notes, given as the consideration of land sold, are entitled to participate in the lien of the vendor which passes with the notes.—

The whole consideration, and amount of each of the notes that were given, operated as a lien upon the land, and each was equally secured by it. The assignment of the note by Corder to King, carried with it its ratable share of the lien, as well as the personal responsibility of the payor. The pursuit of both of these remedies, with due diligence, would, perhaps, alone entitle the assignee to recourse upon the assignor: but certainly if either could be dispensed with, the latter could not. If they have not been taken, or at least the latter, the equity of the assignor to his ratable share of the lien, to secure the note in his hands, if even it had remained there, could not be effected though he had, as in this case, removed from the State before the assignment of the second note; much less can it be effected in the hands of Broadwell, the assignee, when it appears, as it does in this case, that no step had been taken by King to enforce the personal responsibility of Pugh: *McClanahan, &c.* vs *Chambers,* (1 *Monroe,* 43.)

—Nor is such lien lost to one who had surrendered his note & taken a note on third person, which proved to be a forgery, and the note of the original purchaser taken in its stead.

Nor do we think that Broadwell has lost his lien for the $300, by the contract made with Pugh, by which he was defrauded into the surrender of the note, by an assignment of the forged note on Givens, which he afterwards surrendered back to Pugh, upon a cancelment of the contract of assignment, and an acceptance of Pugh's note for the $300, including other demands, secured by the mortgage. The contract by which he was made to surrender the note, was fraudulent, and without consideration, and was rightfully cancelled, and upon its cancelment Broadwell should be restored to all the rights which he before held, or was entitled to hold, to the same extent as if the surrender of the note had not been made.

The mere fact that the *note* has been given up and destroyed can make no difference—it is only the evi-

dence of the debt. The *money* which is secured by the lien has not been paid, and until it is paid or otherwise secured, it must be allowed to have its equal share of the lien.

The mortgage, therefore, being disregarded, Broadwell should have been allowed to fall back upon his lien on the land to the extent of the amount of the note asssigned to him.

The Circuit Court, therefore, erred in not allowing him his lien to this extent. And it being alledged, also, that King had obtained, by assignment from Corder, another note given for the land, the Court erred in partially disposing of the case, and directing a sale of so much of the land as would pay one of the notes only, held by King. Such a course might, and most likely would have the effect to cut up the land into small parcels, and sacrifice it to the injury of all that were interested. The whole of the liens upon the land should have been first ascertained and fixed, and upon the failure of Pugh to make payment, so much of the land as might be necessary to discharge the whole amount due, should have been decreed to be sold, and the proceeds ratably divided amongst the several claimants, if an amount was not made by the sale of the whole tract to satisfy all.

The decree of the Circuit Court is therefore reversed, and case remanded, that further proceedings may be had, not inconsistent with this opinion; and the plaintiff in error is entitled to his costs in this Court.

*Curry and Cates & Lindsey* for plaintiff.

Where there are several notes assigned to different individuals, carrying with them a lien on land for which they were given as consideration, the holders of such notes should be all made parties, the amount of lien ascertained, and a sale made to meet them all at once.