## Louisville Title Co.'s Receiver et al v. Crab Orchard Banking Co. et al.

(Decided June 13, 1933.)

WM. MARSHALL BULLITT and T. K. HELM for appellants.

HUGH B. FLEECE, LAWRENCE S. LEOPOLD and HENRY M. JOHNSON for appellees.

BEN F. WASHER, HOMER W. BATSON, GARNETT & VAN-WINKLE for Masonic Widows' & Orphans' Home.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming in part and reversing in part.

The Louisville Title Company is a corporation, organized under the laws of Kentucky, with power to engage in the business of insuring title to real estate, and in the real estate mortgage bond business. In connection with the latter business, it guaranteed "the payment of principal and interest" of all the real estate mortgage bonds which it sold by the indorsement thereon, reading:

> "This is one of the bonds mentioned in and secured by the within name mortgage deed of trust and subject to the conditions set forth on the reverse side of this bond; the payment of the principal and interest thereon at maturity are guaranteed by the Louisville Title Company."

This was signed by its president. There were two types of mortgage bonds guaranteed by it, commonly called (a) term loan, and (b) "sinking fund," bonds. The mortgages to secure each kind of bonds were identical in their provisions, except the sinking fund type, included, in addition to all the provisions of the term loan type, this clause:

> "That in addition to the covenants last above written the other covenants and indebtedness of this instrument and in order to create a fund to be applied on the indebtedness secured by this instrument and the interest on same, the mortgagee will deposit with the trustee, monthly, before the close of business on the even date of each month from this date until the maturity of said indebtedness the sum of $———.''

The method of issuance of the bonds was, the owner of the real estate would execute them, with interest coupons attached, for different denominations, payable annually for a period of years, and secured by a mortgage on his real estate. The mortgage and the bonds were executed to and in the name of the Louisville Title Com-

pany, trustee. A part of its business was to engage in selling these bonds to the general public.

The Louisville Title Company closed its doors June 23, 1931, at which time there were in existence about 60,000 bonds and notes of the face value of about $17,-000,000 (excluding bonds designated "suspended debt" bonds) secured by about 3,000 mortgages. They were all guaranteed by the company. About $2,500,000 were held by the company itself, and the rest, amounting to about $15,000,000, were owned by about 5,000 other persons. Of the term loan bonds $7,700,000 were owned by the public, and of the sinking fund bonds about $7,200,-000 were also owned by the public. About $1,320,000 of the term loan bonds were in the possession of the company, and also about $367,000 of the sinking fund bonds. The company owed debts amounting to $997,250 secured by a pledge of about $1,500,000 of the company owned bonds and notes and other assets of the company. The security pledged to secure the $997,250 was of the total book value of something over $2,500,000. The $997,250 indebtedness was incurred and secured during the year or two years next before the company closed. The company also owned bonds of the face value of $503,000, which it marked as belonging to a guaranty fund, securing the company's title insurance policies as required by section 734, Ky. Stats.

The face value of the policies is $234,000,000. Losses on this amount, however, have been very small in the past, and it is conceded that these risks can be insured in other companies for a cash consideration of about $200,000, which, if the pledged bonds are taken at their face value, would release about $300,000 of these bonds. If the pledged bonds and the notes above mentioned be deducted from the company owned bonds, the amount of free asets of this class is reduced to less than $300,-000. The contingent liability of the company as guarantor on the bonds in the hands of the public is estimated at $15,000,000. The trial court's conclusion was that its liability as guarantor resulting from the defaults of the borrowers and the loss of the proceeds of the foreclosure sales will be about $2,500,000. The resources estimated at the present value of the company's assets, both pledged and free, is about $1,800,000. It was the finding of the trial court that $997,250 will be required to pay secured creditors, "other than bond-

holders." When this amount is added to the $200,000 required for title insurance above indicated, and deducted from the $1,800,000 estimated value of the assets (pledged and free), we have remaining $602,075, the only resource for the payment of the $1,100,000 of sinking fund losses and the estimated liability of $2,500,000 on the company's guaranty, thus showing there will be nothing for stockholders, and reasonably certain nothing for general creditors, unless certain classes of bondholders are determined to be general creditors. Excluding the bondholders, it was determined by the trial court that the claims of the general creditors of the company amounted to about $20,000. It was also his finding that the only claims which could hope to share in any of the liquid assets of the company were those of the bondholders, thus eliminating the grounds of contest between the bondholders on the one side and general creditors on the other. The actual contest presented for determination is between the different groups of bondholders themselves, some of whom claim priorities and the others the opposite. The basis of this contest between them is (a) irretrievable losses by reason of the default and insolvency of the borrower; (b) insufficiency of the mortgaged security; (c) failure of the corporation's guaranty.

The facts do not authorize the tracing of misapplied trust funds (sinking fund deposits) into the assets of the corporation (Bright v. King, 56 S. W. 1129, 21 Ky. Law Rep. 1758, Bright v. King, 45 S. W. 508, 20 Ky. Law Rep. 186; New Farmers' Bank's Trustees v. Cockrell, 106 Ky. 578, 51 S. W. 2, 21 Ky. Law Rep. 177), or the application of the doctrine of subrogation, or the "marshaling of assets."

The Louisville Title Company, as trustee at the time of its selling of the mortgage bonds to the members of the general public, had, as we have already stated, guaranteed their payment to the purchaser and so indorsed them. The Fidelity & Columbia Trust Company, as its receiver, is here insisting that its obligations as a guarantor were ultra vires and void. In view of the conclusions we have reached, it is immaterial whether the Louisville Title Company be regarded and considered a guarantor or an ordinary indorser. Whether it be regarded as the one or the other, the principles of equity forbid, and it would be unconscionable in the cir-

cumstances to permit it to participate in the proceeds of the mortgage property which secures the mortgage bonds or in the voluntary payment thereof by the makers. The payments to it as trustee by the makers, in accordance with the terms of the mortgage bonds, exceed the amounts of bonds owned by it at the time it closed its doors. The amounts so paid by the makers of the bonds were dissipated by it, by the commingling them with its own funds and paying them out for its own use, in its business. The circuit court decreed that the bonds owned by the corporation at the time it suspended business should not be permitted to participate with the owners of the mortgaged bonds to whom it had sold them until the latter was satisfied, except where voluntary payments were made by the makers of the bonds, since the corporation closed its doors, or which may hereafter be made, but, in the distribution of such payments, the bonds owned or held by the corporation should be permitted to participate. To the decree of the chancellor to this extent we cannot agree. The existing conditions have been produced, partially at least, by the defalcation of the corporation as trustee, and the necessities of justice and the elements of fair dealing forbid it participating by reason of any bond owned or held by it as "suspended debts" or otherwise, in either the rents, issues, or profits or proceeds of the sale of the mortgaged property or the voluntary payments heretofore made and now on hand, or hereafter made by the makers of the bonds. After the bonds owned by the members of the general public, sold and so indorsed to them by the Louisville Title Company, shall have been fully paid, in the order and as they mature, to the respective owners thereof, if and when so paid, there remains in the hands of its successor or the trustee either rents, issues, or profits or any part of the proceeds of the sale of the mortgaged property or the voluntary payments made by the maker, then whatever remains in the hands of the trustee may be paid to the Louisville Title Company or its successor, but not until then. This theory is consonant with the general rule that, when the holder of a number of notes secured by a mortgage parts with one or more of them, retaining the rest, and the mortgaged property is sold to satisfy the notes for which it was given to secure, and the proceeds are insufficient to pay all the notes in full, the holder who parts with some of them by endorsement,

for value, is regarded as thereby becoming a surety to the indorsee, and, if he afterwards becomes insolvent, neither he, his assignee for the benefit of creditors, or his estate, can receive payment out of the proceeds of the mortgaged property until the holder of the notes which were so transferred are paid in full. Fourth National Bank's Appeal, 123 Pa. 473, 16 A. 779, 10 Am. St. Rep. 538; Stimpson v. Bishop, 82 Va. 190; Lawson v. Warren, 34 Okl. 94, 124 P. 46, 42 L. R. A. (N. S.) 183, Ann. Cas. 1914C, 139; Brewer v. Atkeison, 121 Ala. 410, 25 So. 992, 77 Am. St. Rep. 64; Knight v. Ray, 75 Ala. 383; Bostick v. Jacobs, 133 Ala. 344, 32 So. 136, 91 Am. St. Rep. 36; McClintic v. Wise's Adm'rs, 25 Grat. (66 Va.) 448, 18 Am. Rep. 694; Jenkins v. Hawkins, 34 W. Va. 799, 12 S. E. 1090. In Pomeroy's Equity Jurisprudence, sec. 1203, the rule is stated thus:

> "When a mortgagee assigns one or more of the notes and retains the remainder of the series, it is generally held that the assignee is entitled to the priority of lien as against the mortgagee with respect to the note or notes so terminated; and this rule pertains without regard to the order in which the notes held by the two parties mature."

The correctness of Mr. Pomeroy's statement is supported by the opinions of the courts in Alabama, Illinois, Indiana, Louisiana, Massachusetts, Mississippi, Nebraska, and the other states in which the cases supra were decided. The principle was recognized in Cargile v. Brisco, 205 Ky. 394, 265 S. W. 929; Reed v. Shirley, 208 Ky. 387, 271 S. W. 73; Broadwell v. King, 3 B. Mon. 449; Thomas v. Wyatt, 5 B. Mon. 132; Bank of Ky. v. Allen, 8 Ky. Law Rep. 36. The reason for it is fortified in the present case by the fact that the guarantor or indorser sold and indorsed the bonds owned by the members of the general public or held by pledges, and, by reason of its office as trustee, received payments for them, and appropriated such payments to its own use, and thereafter developed insolvency. It is conceded that, unless its hands are stayed by the principles of equity, the Louisville Title Company will participate in the voluntary payments made by the makers of the bonds since it was closed by its insolvency. Its liability as an indorser or guarantor because of it insolvency is unenforceable. To avert a possibility of the bona fide holders of the bonds sustaining a loss, it is equitable to

them that its rights to enjoy and receive a portion of the voluntary payments be postponed until the bonds of the innocent holders shall have been paid. It has nothing in its favor to call forth into activity any principle of equity entitling it to participate in a voluntary payment of the maker of any series of bonds so long as the innocent holders remain unpaid, or there is a chance for such holder to sustain a loss on a bond which it indorsed or guaranteed. This is in accordance with the general doctrine of equity that, where a party comes into a court of equity, he must have clean hands and is bound to do justice and not ask the court to become an instrument of inequity. Glenn v. Lowther, 219 Ky. 383, 293 S. W. 947. It is argued by the Fidelity & Columbia Trust Company that all the mortgages as well as the bonds secured by them should be merged, collected, and distributed as one unit to prevent preference and discrimination among the holders of the bonds. The mortgage of each borrower and the series of bonds secured thereby, although they designate the same trustee, necessarily constitute one unit, and the court is without power to merge all of them and prorate the proceeds of the mortgaged property, accordingly.

The decree of the circuit court is in harmony with our views, except that portion of it which permits the Louisville Title Company to participate in the distribution, or to receive a portion of the voluntary payments of the borrower, heretofore, or hereafter, made by the maker in compliance with the terms of the series of the bonds secured by his mortgage.

To this extent the decree is reversed for proceedings consistent with this opinion.

Whole court sitting, except Dietzman, J.