# Dorman et al. v. Bankers' Trust Co.'s Receiver et al.

(Decided May 17, 1935.)

WALTER P. LINCOLN for appellants.

BENJAMIN F. WASHER, HUGH B. FLEECE, FURLONG & WOODBURY and EDWARD BLOOMFIELD for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The banking commissioner on this appeal is contending the court erred:

(a) In holding the guarantee it gave when it sold certain bonds is an enforceable obligation against the Bankers' Trust Company.

(b) In holding that a bondholder who has suffered a loss from the dissipation of the sinking fund by the Bankers' Trust Company has a preferred claim in the distribution of sums received on a series of bonds, as against the bonds of the same series held by it. In other words, in holding that bonds of classes x and y had preferred claims over class z as hereinafter defined, and

(c) In holding bonds of class x were not entitled to a preference over class y bonds and over depositors and general creditors. H. G. Young et al., who are holders of bonds of class x, have prosecuted a cross-appeal and are insisting they are entitled to have their claims preferred as against all creditors.

This is the third appeal to this court that has come out of the liquidation of the Bankers' Trust Company. For former appeals, see Young v. Bankers' Trust Co.'s Receiver, 250 Ky. 1, 61 S. W. (2d) 904, and Porter v. Bankers' Trust Co.'s Trustee, 255 Ky. 590, 75 S. W. (2d) 31.

During the time it was open for business, the Bankers' Trust Company sold and guaranteed the payment of bonds aggregating over $1,600,000. These bonds were signed by different parties, were secured by trust mortgages, by the terms of which the makers of the bonds were required to pay the Bankers' Trust Company, trustee, monthly and other payments thereon. These payments were supposed to go into a sinking fund out of which these bonds were to be paid when they matured, and this sinking fund, the trial court found, was dissipated by the Bankers' Trust Company before its affairs were placed in the hands of the banking commissioner. The plan under which these bonds were issued and sold cannot be distinguished from the plans considered in other cases. See Fidelity, etc., Trust Company v. Schmidt, 245 Ky. 432, 53 S. W. (2d) 713; Masonic, etc., v. Title Insurance, etc., Co., 248 Ky. 787, 59 S. W. (2d) 987; Louisville Title Company's Receiver v. Crab Orchard Banking Company, 249 Ky. 736, 61 S. W. (2d) 615.

After the failure of the Bankers' Trust Company, the banking commissioner of Kentucky took charge of its general affairs, but matters arising out of its trusteeship, that is, these sinking fund matters, and the pay-

ments made under these bonds were placed by the court in the hands of the appellee Walter E. Jacobs. That action was affirmed ion the first appeal. An unsuccessful effort was made to remove Jacobs and that action was affirmed on the second appeal.

While it was open for business, the Bankers' Trust Company made divers mortgage loans, taking from the borrowers bonds therefor, both principal and interest on these bonds being payable to it as trustee, and such payments it should have kept in what it termed the sinking fund account. Some of these bonds it sold to the general public and guaranteed their payment, and when its affairs were taken over by the banking commissioner, it should have had in this sinking fund account enough to pay in full certain bonds held by the general public, for it had collected them in full and released the mortgages securing them. These bonds we will call class x.

As to other bonds held by the general public and guaranteed by the Bankers' Trust Company, the payments made into this sinking fund account had not then been sufficient to pay any more than a portion of them, and upon these bonds the borrowers have since the closing of the Bankers' Trust Company been making payments to the receiver. These we will call class y.

There were other bonds of which the Bankers' Trust Company was itself the owner, when it closed its doors, and which are now in the hands of the banking commissioner. These we will call class z.

The Charter of the Bankers' Trust Company.

The principal contention of the banking commissioner is that when the Bankers' Trust Company sold these bonds and guaranteed their payment, that its act in so doing did not bind it. The first attack is made upon the articles of incorporation or the charter itself. Section 539 of Ky. Stats. provides that parties who desire to form a corporation shall execute articles of incorporation which shall specify certain things—among these things we find—"[8] The highest amount of indebtedness or liability which the corporation may at any time incur." In its articles of incorporation, the organizers of the Bankers' Trust Company put this:

"[VIII.] The highest amount of indebtedness or liability which the corporation may at any time incur shall be unlimited."

What is the effect of that? For the banking commissioner, it is contended that the failure to provide a limit to the debts it could incur made the contraction of any debt by the Bankers' Trust Company illegal and void. With this we cannot agree. Men who contemplate the organization of a corporation are not usually much concerned about the protection of the public, but solely with the protection of themselves. That is the very purpose of incorporating. Our statutes constitute an open invitation to all who may choose to accept their protection by complying with their provisions, and it is usually held that a substantial compliance is sufficient. 14 C. J., p. 119, sec. 113.

If incorporators fail to comply with the statute, the secretary of state might refuse to file their articles as was done in case of Cheaney v. Bruner, 141 Ky. 32, 132 S. W. 167, but if such articles are filed, and these were, then failure to comply with any statutory provision in organizing can only be taken advantage of in a direct proceeding by the commonwealth to annul the charter. Portland, etc., T. Company v. Bobb, 88 Ky. 226, 10 S. W. 794, 10 Ky. Law Rep. 796; Walton v. Riley, 85 Ky. 413, 3 S. W. 605, 9 Ky. Law Rep. 29; 14 C. J., p. 121, sec. 116.

Section 566, Ky. Stats., expressly denies to the corporation any right to rely upon its want of legal organization.

### The Guarantee of these Bonds.

Upon the back of each of these bonds this appears:

"This is one of the notes or bonds mentioned in, and secured by the within-named trust deed. The payment of principal and interest thereon at maturity is guaranteed by .

"BANKERS' TRUST COMPANY.

"By ——————, President."

Whenever the Bankers' Trust Company sold one of these bonds, this indorsement was signed by the president and the bond was delivered to the purchaser.

The banking commissioner now contends, that in the absence of evidence of the president's authority to do so, that the trial court erred in holding such guaranties to be enforceable obligations of the Bankers' Trust Company. Here is the very language of the judgment of which the banking commissioner is complaining:

"With respect to bonds held by the Bankers' Trust Company, at the time of its closing, or bonds held by the Banking Commissioner of Kentucky or Liquidating Agent, of said Bankers' Trust Company, the Court finds and adjudges the following rights and priorities.

"[a] In all instances where bonds so owned are in competition with other bonds of the same series, owned by members of the general public, neither the Bankers' Trust Company, nor the Banking Commissioner, or Liquidating Agent is entitled to participate by reason of any bonds so owned by the Company or Commissioner or Agent, in either the rents, issues or profits resulting from the mortgaged property or the proceeds of the sale of the mortgaged property or the voluntary payments made by borrowers; until the bonds owned by members of the general public shall have been fully paid, principal and interest.

"[b] In all instances in which there exists a sinking fund loss, in any series, bonds held by the Bankers' Trust Company or the Banking Commissioner or Liquidating Agent, in such series, are not entitled to participate in any distribution as above mentioned, until such sinking fund loss has been made good, for the benefit of other bonds in such series owned by members of the general public.

"[c] If and when rights and priorities as adjudged in 'a' and 'b' supra, have been satisfied, there remains any funds in the hands of the Receiver, available for the payment of any bonds, owned by the Bankers' Trust Company, or the Banking Commissioner, or Liquidating Agent of the Bankers' Trust Company, such funds shall be turned over by the Receiver to the Banking Commissioner, the Liquidating Agent of the Bankers' Trust Company, to be held by the said Banking

Commisisoner and Liquidating Agent as funds against and in which bondholders who have suffered losses on account of the dissipation of Sinking Fund deposits, by the Bankers' Trust Company, before its closing, have a prior and superior claim in the amount lost by each of such bondholders through the dissipation of sinking funds as aforesaid, over debts due general creditors. The Banking Commissioner and Liquidating Agent is charged with the duty of preserving and distributing funds so received from the Receiver to the end that the priority of right herein adjudged in favor of bondholders who have suffered sinking fund losses, shall be observed and satisfied.''

Thus in each series the bonds in classes x and y are adjudged a priority over bonds in class z in the distribution of any funds in the hands of the receiver, and they are also adjudged a priority over class z bonds in any distribution to be made by the banking commissioner. What difference does it make whether or not the president had authority to guarantee bonds he exercised it regularly and habitually, the Bankers' Trust Company held him out month after month and year after year as having it, and by so doing sold over $1,-600,000 of these bonds for all of which it got par and often more, and now after getting and keeping the money of these purchasers, it is estopped to deny that he had that authority and the banking commissioner who stands in its shoes is bound by the same estoppel. Moreover, it was the Bankers' Trust Company that dissipated the money paid in by the borrowers to build up a sinking fund to meet and retire these bonds at maturity, and, as between it and the other bondholders, the loss should fall on it, for no principle is better settled than this that where a loss must fall on one of two parties, the law will place it upon the one that caused it, and thus we dispose of appellant's contentions (a) and (b).

## The Class x Claims.

As to these claims, the banking commissoner and the cross-appellants, H. G. Young et al., are in perfect agreement. These bonds were paid in full to the Bankers' Trust Company, whilst it was yet a going concern. Here is the judgment of the trial court as to these claims:

"In so far as the pleadings of Young and Gibson seek to assert priority of right, over claims and interests held by the holders of Sinking Fund Bonds, in payment by the makers of such bonds; the Court finds that there are no priorities as between the class represented by Young and Gibson, and the class represented by Sinking Fund bond-holders, as regards payments made on said bonds."

We are unable to find any error in this. The Bankers' Trust Company has received more or less money on all these bonds, and on these class x bonds it has received enough to pay them in full. All of these receipts are trust funds, and the court has provided that after exhausting the funds arising from the particular properties mortgaged to secure them, that these bondholders shall have a prior and superior lien on the fund in the hands of the banking commissioner, arising from class z bonds collected by the receiver and paid by him to the banking commissioner. This seems to be all they could ask. We are unable to see why a man whose bonds have been fully paid should have any greater rights than a man whose bonds have been partially paid.

We have said nothing of the second judgment, but it was simply a concrete application of the principles announced in the first one, and since we have found no errors in the first judgment, it follows the second judgment is not erroneous. Both judgments are affirmed on both original and cross-appeal. The whole court sitting.