## Berry's Guardian et al. v. Title Ins. & Trust Co. et al.

(Decided Feb. 28, 1936.)

W. W. DOWNING for appellants.

J. C. GRAVES, ELLIOT LEE MADDOX and BECKHAM OVERSTREET for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The Louisville Title Company, prior to its becoming financially crippled and partly financially paralyzed following the depression throughout the country, which began in the latter part of 1929, loaned in the aggregate a vast sum of money to real estate owners in Louisville and other parts of the commonwealth, which

was secured by a first mortgage on the property of the borrowers. Negotiable bonds or notes in fractional parts, each due at future periods with interest coupons attached, were executed by the borrowers. After the completion of the lending transactions, the title company negotiated such bonds to any one who desired to invest in them. At the time it failed it had effected such loans in an aggregate amount of many millions of dollars all of which was secured in the manner stated, with it as mortgagee in the various mortgages that it took for its own security and as trustee for future holders of the bonds. In negotiating such bonds it guaranteed the payment thereof and thereby became personally liable for the entire sum that it so loaned. When it became manifest to its stockholders, and, perhaps also to its creditors, that it could no longer proceed or meet its obligations because of its financial impairment, a meeting of all parties interested was had at which a scheme for reorganization was determined upon and later effected whereby plaintiff and appellee herein, Title Insurance & Trust Company, became substituted as the trustee in such various loans for the holders of the bonds so negotiated by the defunct title company.

Without going into details it is sufficient to say that the reorganized plan so agreed upon together with the approval of the right of the substituted trustee (plaintiff and appellee) to carry on the business of its predecessor (with powers, authority, and limitations contained in the reorganization agreement) was approved by us in the recent cases of Cralle v. Louisville Title Co., 244 Ky. 753, 52 S. W. (2d) 891; Fidelity & Columbia Trust Co. v. Schmidt, 245 Ky. 432, 53 S. W. (2d) 713; Masonic Widows' & Orphans' Home and Infirmary v. Title Insurance & Trust Company, 248 Ky. 787, 59 S. W. (2d) 987; and Louisville Title Co.'s Receiver v. Crabb Orchard Banking Co., 249 Ky. 736, 61 S. W. (2d) 615. The opinions in those cases did not determine, or at least did not clearly do so, another question affecting the rights of the reorganized trustee (plaintiff and appellee) in foreclosing liens on the mortgaged property and its rights to purchase the property at decretal sales that might be rendered in such proceeding and take title thereto as a continuing trustee for the bondholders of that particular series of bonds, and to thereafter handle the property in

the best way possible to produce dividends with the power to sell it and divide the proceeds according to the provisions contained in the approved reorganization plan.

Also the question was yet in doubt (although the reorganization plan so provided) as to the right of the trustee as such purchaser to discharge its accepted bid with the bonds secured by the mortgage without becoming obligated to discharge it with the payment of cash as per the terms of the judgment of sale if a stranger were the purchaser. To settle those questions a later action was filed in the Jefferson circuit court styled "Title Insurance & Trust Company, trustee, etc. plaintiff v. Fidelity & Columbia Trust Co., receiver, etc. et al., defendant." On final submission of that action in that court it rendered judgment upholding the right of the reorganized trustee (plaintiff and appellee) to purchase the property at such judicial sales for the enforcement of such liens and to discharge the purchase price by delivering to the mortgagor his prior executed bonds to secure which his mortgage was executed; and that after such purchase the trustee could dispose of the property in the exercise of its sound business discretion, but until that was done it had the authority to rent out the property or otherwise handle it so as to derive the most income therefrom—all for the benefit of the bondholders who were entitled to participate in the net proceeds of the sale, whensoever made by the reorganized trustee in proportion of the amount of their bonds to the entire amount of the particular series outstanding—they receiving their per cent. of the net purchase price according to their holding per centage of the entire bonds.

A. C. Kreiger was made a defendant in that action, as a representative of the identical class of bonds that are held by the appellants in this case and he was authorized by an order of the court to defend the action for himself and all others similarly situated. All other interests in the litigation were likewise represented. Kreiger for himself and those whom he represented appealed from that judgment to this court and we affirmed it in the case of Krieger v. Title Insurance & Trust Company, 260 Ky. 1, 83 S. W. (2d) 850.

In the meantime, and before such affirmance by this court, this action was instituted in the Jefferson circuit court, chancery branch, second division, by plaintiff, as reorganized trustee, against Beckham Overstreet and wife, as the mortgagors, with Ben J. Johnson statutory guardian for some named infants as the third defendant. The petition averred that on the 28th day of May, 1929, Overstreet borrowed from the Louisville Title Company $14,000, evidenced by his fourteen notes or bonds with attached coupons, each of them maturing at future separate periods, and all secured by a mortgage on some residential property in the city of Louisville and had defaulted thereon so as to precipitate the right of the trustee to foreclose the mortgage. It was also averred (but perhaps in an amended petition) that Johnson, as such statutory guardian, had purchased for his wards two of Overstreet's obligations and he, as such fiduciary, was interested in the action to that extent. The petition prayed for a judgment of sale of the property with the right of the plaintiff, trustee, to purchase it at the sale if it saw proper under the limitations hereinbefore set out, and that Johnson manifest his lien and file the two bonds that he held as guardian for his wards. The court required him to do so and entered judgment in accordance with the prayer of the petition. At the sale plaintiff in the action purchased the property at a sum slightly more than two-thirds of its appraised value and which the master commissioner making the sale duly reported. Johnson, as guardian, objected to the confirmation of the sale and otherwise attempted to manifest his alleged right to require the purchaser to pay for the property otherwise than through the delivery of the bonds in which he had invested his wards' funds, and his additional alleged right to participate in the proceeds of the sale when the purchase price was paid at the due dates therefor fixed in the judgment. His exceptions were overruled, and from that judgment he prosecutes this appeal.

As we have stated, the judgment appealed from was rendered before our opinion in the Kreiger case, supra, and in appellant's brief we find this statement: "By the Kreiger decision (supra) which has been decided since this case was tried in the lower court the appellant may be concluded. We think, however, that

our situation is different. Here we are pyramiding trustees. Ben J. Johnson is acting in a fiduciary capacity. His hands are tied by his trustee who holds real estate for him and others. This trustee holds the property at its pleasure, and its ability to sell it at private sale. The wards find themselves confronted with double trustees.'' Counsel then proceeds to argue that beneficially owned bonds by persons who are not sui juris, and the legal title to whose securities are required to be held by a fiduciary, stand upon a different plane and occupy a different position from that of sui juris bondholders, and that the principles announced in the Kreiger case should not, therefore, apply in this case.

In the Krieger case two classes of bondholders were appropriately represented—the one embracing those who voluntarily surrendered their bonds in order to effect a reorganization as per terms of that agreement, and the other class representing those who declined to surrender their bonds but for whom the plaintiff herein was made substituted trustee, and to which latter class the bonds held by the guardian in this case belonged. Therefore, all questions relating to the rights of both surrendering and nonsurrendering bondholders, both in the security for their debts and in enforcement proceedings of such liens, were presented and adjudicated in the Krieger case and to which and in which all nonsurrendering bondholders were parties representatively and became bound by that judgment after our affirmance thereof became final. Therefore, unless the differentiating fact that appellant urges (i. e., that the Krieger judgment did not specifically deal with the rights of equitably owned bonds by persons not sui juris) may be given the effect of increasing his rights above those of sui juris bondholders of the same class the Krieger judgment is conclusive of the questions urged by him on this appeal.

We are cited to no authority sustaining appellant's contention. But counsel employs a form of reasoning based upon adjudications, and in some instances statutes, embodying equitable principles for the protection of infants' estates, as a foundation for his position; but none of which has the least application to the question here involved. He argues, as will be seen from the inserted excerpt from his brief, that it is

inequitable to require non sui juris bondholders to pay double fees and commissions in order to realize upon their securities and which doubling, as he outlines it in this case, arises from the fact that the trustee will eventually, upon final sale of the property and settlement by it, receive fees for its services and that he as guardian will likewise receive his fees. But that unfortunate burden, if we may so call it, attaches to all infants' estates or those where the legal title is held by a fiduciary in accordance with the provisions of law. It would be as much applicable, as we conclude, to argue that an infant or other cestui que should first have the fees of his fiduciary paid out of the proceeds of property in which he has an interest before any division is made between him and other sui juris lienholders of the same dignity, in order, as counsel would argue, that the ward or cestui que should not be discriminated against and receive as his net portion the same amount that the other creditors receive undiminished by fees and charges of their guardians or other fiduciaries solely from their allotments. The argument is wholly nonconvincing and cannot be accepted by us.

The Krieger opinion settled the rights of all creditors of each class involved, and we see no escape from its concluding the rights of the parties herein. The trial court followed it in rendering the judgment appealed from, and it is affirmed.